## MORRISS–BUICK CO. v. PONDROM.
### No. 11625.

Court of Civil Appeals of Texas. Dallas.
May 11, 1935.

Rehearing Denied June 8, 1935.

R. T. Bailey, of Dallas, for appellant.

Young, Blakley, Cooper & Armstrong and Joe Utay, all of Dallas, for appellee.

JONES, Chief Justice.

In a suit in a district court of Dallas county, appellee, F. C. Pondrom, recovered judgment in a suit for damages against appellant, Morriss-Buick Company, in the sum of $1,352.70, which sum is composed of an item of $682 actual damages, $400 exemplary damages, and $170.70 accrued interest to May 20, 1933, the date of judgment, and 6 per cent interest on the judgment. The appeal has been duly perfected to this court, and the following are the facts:

On October 2, 1929, appellee purchased from appellant a Buick automobile, being a sedan of the 1929–47 model, for the alleged purchase price of $1,382, but, as shown by the bill of lading issued at the time, for the actual purchase price of $1,389.85. The consideration, as shown by the same instrument, was cash $7.85 and appellee's used Buick sedan of the 1926–47 model at the agreed value of $450, and a note for $932, maturing November 2, 1929. This note was paid soon after its maturity. Appellee knew that the car he was buying had been an obsolete model since July, 1929, at which time the 1930 model Buicks were placed on the market. Appellee stipulated that he wanted a new car, that is, one that had never been used, and he was assured by appellant's sales agent and by Mr. Morriss, appellant's president, that the car was new, and the invoice stipulated that it was a "new 1929–47 Buick sedan." Appellant would not have considered the purchase of an old car, or one that had been wrecked and rebuilt.

While appellant had had no trouble with his 1926–47 model Buick sedan, the car in question gave trouble from the beginning, and he found it necessary to make frequent trips to a service station, during the time he used it, approximately three years; the car having been burned in 1932. Appellee estimated that, during the time he used the car, he had spent approximately $1,000 in having it serviced. Because of appellant's assurance that it was a new car, appellee did not suspect that the car had been used before he purchased it, and did not suspect that it had theretofore been wrecked and rebuilt, but believed the trouble with it was due to the fact that he purchased a new defective car. A short time before this suit was filed on December 10, 1932, appellee discovered that the car he purchased was not a new car, but had been wrecked by an agent of appellant, had undergone extensive repairs, and was later sold to him as a new car. After a failure of negotiations for an adjustment, this suit was instituted to recover damages by reason of the alleged fraudulent representation that the car was a new and unused car.

The pleadings of the parties are substantially the same in the material allegations; both of appellee, as plaintiff, and of appellant, as defendant, as the pleadings in Morriss-Buick Co. v. H. H. Huss, 84 S.W.(2d) 264, this day decided by this court. For the substance of the allegations in the pleadings, we refer to the statement of that case. As in the Huss Case, the material questions involved in the suit rest on disputed issues of fact, except as to the fact that appellee bought the car in question for the price

named, that it was at that time an obsolete model, and that it was sold as a new and unused car.

The court submitted the case on special issues in the form of interrogatories. These special issues are the same in substance as those submitted in the Huss Case. The findings of the jury in this case are: (1) The car sold by appellant to appellee on October 2, 1929, had been damaged in a wreck prior to such sale; (2) appellee was ignorant at the time he purchased the car of its previous damaged condition; (3) appellee would have refused to purchase the car had he known it had previously been damaged in a wreck; (4) appellee could not have discovered the fact that said car had been damaged in a wreck prior to its purchase, within a short time after the purchase, by the exercise of ordinary care; (5) the reasonable cash market value of the car in Dallas, on October 2, 1929, was $600; (6) appellant wilfully concealed from appellee the fact that the car had been theretofore damaged in a wreck; (7) appellee is entitled to exemplary damages in the amount of $400.

In connection with special issue No. 4, the court correctly defined the term "ordinary care"; in connection with special issue No. 5, the court correctly defined the term "reasonable cash market value"; in connection with special issue No. 6 the court correctly defined the term "wilfully concealed"; and in connection with special issue No. 7, the court correctly defined the meaning of exemplary damages, as such term is applied to the facts of this case; but, after such definition, erroneously informed the jury that, in naming the amount of special damages, their findings could not "exceed the amount sued for by plaintiff as attorney's fee, to-wit $400." The findings of the jury in respect to all of the special issues submitted, except as to the award of $400 exemplary damages, given in answer to special issue No. 7, are supported by substantial evidence, and are adopted as the findings of this court. The findings on that portion of special issue No. 7, that appellee is entitled to exemplary damages, is likewise adopted by this court, but the amount awarded as exemplary damages is not adopted by this court, because (a) it is not supported by the evidence as to what is a reasonable attorney fee to prosecute this suit, and (b) because of the error of the court in naming the maximum sum that could be found by the jury in the definition

and explanation of the term "exemplary damages."

The item of $682 for actual damages, fixed by the court in the judgment, was arrived at by the court, by applying the same measure of damages as was applied in the case of Morriss-Buick Co. v. Huss, supra; that is, from the purchase price of the car was deducted the sum found by the jury to have been the reasonable cash value of the car appellee purchased, on the date of the purchase, plus the down payment, which is shown to have been $7.85 cash, and plus the $450 allowance on the used car.

The same attack is made on the measure of damages applied by the court in the instant case as was made by appellant in the Huss Case, supra. This court having in the former case overruled all of appellant's contentions in respect to the measure of damages, under the particular facts of that case, likewise overrules such contention in the instant case, based on substantially the same facts. We here refer to the discussion of such question in the Huss Case; and adopt same, and the authorities therein cited, as the reason for so ruling in the instant case.

The question of the $400 exemplary damages, awarded by the court on the finding of the jury in this case, is different from the question of exemplary damages awarded in the Huss Case, supra, although the court committed the same error in that case as was done in this case; to wit, giving to the jury as a maximum sum the amount named in the petition. In the Huss Case, one qualified attorney testified as to what would be a reasonable attorney fee in that case, and likewise one qualified attorney testified in the instant case as to what would be a reasonable attorney fee. The measure of exemplary damages in each case is the value of a reasonable attorney fee for the prosecution of the suit. In the former case, the evidence of the attorney, used as a witness by appellee, was that a reasonable attorney fee would be $250, which was the sum named in the plaintiff's petition. In the instant case, the attorney, used as a witness by appellee, testified that a reasonable attorney fee is $350, $50 less than the sum named in appellee's petition. Apparently, the parties in each case accepted as reasonable the fee fixed by the witness in each case, for in neither case was other evidence offered. The findings of the jury in the former case was $200, $50 less than the value of such fee under the undisputed

evidence, and $50 less than the amount alleged by appellee in his petition. So, under the authorities cited in that case, we held that, while it was error on the part of the court to inform the jury that its finding on such issue could not exceed the sum of $250, yet as the finding was for less than that amount, and less than the amount fixed by the undisputed evidence in the case, no harm resulted to appellant by the erroneous charge of the court, and the judgment in that respect was affirmed.

The construction that error was harmless in that case cannot be given under the facts of the instant case. The effect of the charge of the court, directing the jury that its finding on exemplary damages could not exceed $400, the sum named in appellee's petition, is to inform the jury that the evidence would sustain a finding in the maximum sum. The evidence does not sustain such finding; hence the record, instead of affirmatively showing that no harm resulted to appellant because of this error, on the contrary, shows that harm did result to appellant in the instant case.

■ Can the effect of this error be cured by requiring a remittitur of $50 and thereby cause the judgment on the item of exemplary damages to conform to the undisputed evidence, as to the reasonable value of the attorney fee? If the evidence were conflicting as to the value of such reasonable attorney fee, it could not be cured in such manner, for then this court would have no basis on which it would be authorized to fix the attorney fee; or if it could be reasonably said that this error of the court in any way affected any of the material findings in this case, then the error in the amount of judgment for exemplary damages could not be cured by requiring a remittitur. Neither of the above conditions exist in this case. The undisputed evidence, accepted by both appellant and appellee as naming the true sum fixing the amount of a reasonable attorney fee, and thereby fixing the amount of exemplary damages to be awarded, fixed $350 as such an award. We are of opinion, therefore, that such error can be cured by requiring appellee to file a remittitur in the sum of $50. Certainly, this court would have been authorized to reform the judgment in conformity to the undisputed evidence, if the trial court had not committed this error, and appellant had assigned error on the excessiveness of the judgment, because it exceeded by $50, the sum fixed by the undis-

puted evidence. The error of the court perhaps would not permit us to reform the judgment, without requiring such remittitur, so as to cure the sole wrong suffered by appellant, through the erroneous charge of the court. The cases cited on the same issue in the case of Morriss-Buick Co. v. Huss, supra, are cited here.

It therefore follows that, in our opinion, this case should be affirmed, provided appellee files a remittitur of $50, thereby reducing the judgment of $400 as exemplary damages to a judgment of $350. If such remittitur is not filed within ten days, the judgment will be reversed and remanded.

All assignments of error not specifically discussed in this case, or in the case of Morriss-Buick Co. v. Huss, supra, bearing on this case, are overruled.

Affirmed, provided the remittitur is filed by appellee within ten days; otherwise, reversed and remanded.

BOND, Justice (dissenting).

Reviewing the record and the opinion of this court, I am convinced that the judgment of the lower court should not stand, and that this court is not warranted in authorizing a remittitur by appellee on the judgment for exemplary damages, in order to avoid the consequence of a reversal on substantial and harmful error.

Taking the whole situation as it appears in the record, especially considered in the light of appellee's pleadings and evidence, in my opinion, the cause of action is one founded upon a breach of implied warranty, and not one such as to give rise to malice in the absence of pleading and proof that the acts complained of were intentionally done for the purpose of and with the design to defraud appellee.

Appellee alleged that, on October 2, 1929, he purchased from defendant an automobile, a 1929–47 Buick sedan, in consideration of $1,382; that the defendant's "agent or agents and/or its employee or employees, whose name or names are unknown" represented to him that the automobile which he purchased was a new automobile; that on October 27, 1932, he discovered that the automobile which he did purchase was, on or about July, 1929, while being driven by R. B. Irion, badly wrecked in a collision with an automobile driven by Dr. Roy Keller; that the automobile after the collision was rebuilt

and sold to him as a new automobile; that the representations were false and fraudulent, and known to be false by the party making them; that they were made for the purpose of defrauding and cheating him; and that he suffered damage in the amount of $1,000 "by reason of defendant's false representations in failing to deliver him a new automobile, and by reason of concealing from plaintiff that said car had been wrecked and rebuilt prior to its sale to him, the said sum of $1,000, being the difference between the purchase price of the automobile paid to the defendant and the value of the automobile that defendant delivered to this plaintiff at the time of delivery." Appellee further alleged that he "believes that prior to and subsequent to October 5, 1929, defendant carried on a course of business of selling wrecked and used automobiles as new cars to different parties, and that because of defendant's willful fraud, plaintiff is entitled to exemplary damages in the sum of $400, that being a reasonable amount for his attorney's fees herein."

The evidence shows that on the date of the sale, the Morriss-Buick Company was the local agent for the handling of Buick automobiles in the city of Dallas, Tex., that it had two places of business, one branch in Oak Cliff, West Dallas, and one at Cedar Springs Road, North Dallas. Appellee testified: "I went over to Oak Cliff branch of the Morriss-Buick Company and looked at the cars and picked out a car I was going to buy—a 1930 model, a new model—and I told them at that time I wasn't going to buy it just then, but I would buy the car in December. * * * Some time after that, in October, I went down there * * * and a man by the name of Knight, their salesman, approached me and said: 'Frank, would you be interested in a 1929 model, brand new, that has never been driven off of the floor?' And I said, 'Can I save any money on it?' I said, 'I won't have anything to do with the car unless it is a brand new one,' and he said, 'We have several that we have never sold and they have never been off of our showroom, and I can save you a few hundred on that,' and I said, 'Do you allow me as much on my car as if I was buying a new 1930?' He said, 'Yes, we can do that,' and he took me over to the new shop at Cedar Springs, and I think they had nine on the floor out there that

were represented to me to be brand new cars, and I said, 'Which one?' And he said: 'What one do you like?' And I picked out one and he told me to drive it off the floor." It must be observed here that there is not a centiliter of testimony in this record that the salesman who was dealing with the appellee knew at that time the automobile which Pondrom selected from the floor of the showroom of the Morriss-Buick Company was the automobile which figured in the Irion-Keller collision and rebuilt by the company; but, on the contrary, the evidence discloses that neither Mr. Morriss, the managing officer of the company, nor the salesman who made the sale to Pondrom, knew of these facts.

The testimony is undisputed that the automobile selected by the appellee from nine other automobiles on the floor was the same automobile which appellant delivered to him, and which for almost three years he used for business and pleasure purposes, and then, from an unknown cause, the automobile was destroyed by fire. It must be noted here that appellee testified that he knew automobiles were guaranteed of mechanical defects by the company putting them out; that he had considerable trouble and expense in operating the automobile, yet made no complaint to Morriss-Buick Company of any defect prior to the time the automobile was destroyed, but did soon thereafter, without taking the matter up with the company, place his claim into the hands of an attorney, exacting the attorney's fees.

As applicable to the facts of this transaction, I think, in order for appellee to maintain this cause as one of fraud, it was incumbent upon him to allege and prove not only that the representations were untrue, that the appellee relied upon such representations, and that he was induced thereby to enter into the contract of purchase, but, also, the pleadings and evidence must further show that the representations were known to be untrue by the party or parties making them, and that they were made with the intent and design of deceiving the appellee and to induce him to enter into the contract.

Tested by this rule, appellee failed to show that the party whom he claimed made the representations, which afterwards were proven, as found by the jury, to be untrue, knew they were false at the

time he made them. This being the situation, how could it be said that the acts of the party inducing appellee to make the selection of the automobile amount to fraud in legal acceptation? Furthermore, viewing it in the most favorable light possible, from the appellee's standpoint, I am unable to see how this character of testimony can furnish to appellee the right to recover exemplary damages. Does this evidence show that the appellant has been guilty of such conduct as that society demands punishment be inflicted on it? Where are the aggravating circumstances justifying the imposition? Indeed, the company had a right to rebuild the automobile after the wreck and replace all damaged and mutilated parts with new parts, and it had a right to place the automobile on the floor of their showroom after the repairs, without imputation that it acted with malice or willful intention to defraud appellee; especially so, in the absence of evidence that some corporate official knew that the rebuilt automobile was the one sold to appellee or placed for sale on the showroom floor. The fraud on which appellee bases his claim for actual damages, if, in fact, it may be so interpreted, was neither attended by malice or oppressive conduct, nor followed by special damages apart from the mere loss of the money or property following the subject-matter of the fraud. At most, it was a breach of implied warranty, for which appellee is entitled only to recover for his actual damages.

In the case of Williams v. Detroit Oil & Cotton Co., 52 Tex. Civ. App. 243, 114 S. W. 167, 170, affirmed by Supreme Court, 103 Tex. 75, 123 S. W. 405, the court, in holding that exemplary damage was not recoverable in that case, facts similar to those in the instant case, stated the rule which I think is applicable here: "There seems to be no well-defined rule for determining when exemplary damages should be permitted in suits of this character. We are inclined to the opinion that this should not be done, except in those cases where the deception has been attended by malicious or oppressive conduct, or the abuse of a relation of trust or confidence, and followed by special damages apart from the mere loss of the money or property forming the subject-matter of the fraud. [Citing authorities.]"

It must be borne in mind that a large discretion is allowed juries in fixing dam-ages as a punishment for the acts of the wrongdoer. The sum is said to be awarded as a punishment and not as compensation to the injured person; it is intended as a warning and an example to prevent the defendant and others from the commission of like wrongs. The measure of such damages is based upon the attended circumstances of aggravation as is implied to actions grounded on tort. It is difficult to set any fixed or prescribed limits to the discretion of the jury, or, in fact, to prescribe any rule whatever to guide them in assessing exemplary damages. The amount to be awarded in any case is measured by the rule of just compensation, rather than of fair compensation. Koehler v. Sircovich (Tex. Civ. App.) 269 S. W. 812.

As stated above, appellee, in his petition, sought the award of exemplary damages as just compensation for his attorney's fee in the sum of $400, and, as stated in the opinion of this court, the charge of the court, directing the jury that its finding on exemplary damages could not exceed $400, is, in effect, informing the jury that the evidence would sustain a finding in a maximum sum, and that harm resulted to appellant because of the error. In accordance with this holding, I am convinced that this court cannot substitute a finding of harmful result to appellant in an amount which necessarily was in the province of the jury to determine, under an appropriate legal charge of the trial court. The mere fact that one attorney, qualifying as an expert and testifying that a fair and reasonable attorney's fee is $350, does not, in my opinion, establish a liquidated amount such as a court or jury are required to accept pro tanto in awarding exemplary damages.

Clearly, it was within the province of the jury in the instant case to award an amount as exemplary damages as in its discretion the exigencies of the case demanded. Had the trial court so framed its charge as to submit the issue of exemplary damages as to conform to the testimony, instead of conforming to the pleading, there is no doubt in my mind that such charge would have been just as censorious in law as the charge given and held to be, by this court, a harmful error. If the charge resulted in harm to the appellant, which evidently it did, the extent thereof cannot be measured by the testimony of the attorney alone. It is not within the power of this court to say

to what degree the harmful effect of the erroneous charge extended to allow appellee to file a remittitur and avoid a reversal of the cause. The authorities are replete in permitting remittiturs of amount in judgments, where such is not superinduced by harmful trial court errors, thus avoiding reversal of causes; but there is no precedent, and, in my opinion, the law does not sanction a remittitur, where the amount in judgment is founded on harmful error.

In my opinion, this cause should be reversed and remanded, for the reasons above stated, and, so believing, I register my dissent to the opinion of this court.