**MORRISS–BUICK CO. v. HUSS.**

No. 11626.

Court of Civil Appeals of Texas. Dallas.

May 11, 1935.

Rehearing Denied June 8, 1935.

R. T. Bailey, of Dallas, for appellant.

Young, Blakley, Cooper & Armstrong and Joe Utay, all of Dallas, for appellee.

JONES, Chief Justice.

In a suit in a district court of Dallas county, H. H. Huss, appellee, recovered from the Morriss-Buick Company, appellant, judgment in the sum of $1,021.40, consisting of $675 actual damages, in the purchase of an automobile, $200 exemplary damages, and $146.40 accrued interest, at the rate of 6 per cent. per annum, costs of suit, and interest from May 16, 1933, the date of the judgment. The appeal has been duly perfected to this court, and the following are the facts:

On October 5, 1929, appellee purchased from appellant a 1929-47 Buick sedan, at the then regular purchase price of $1,525; this consideration was paid by the allowance of $700 on a 1928-47 Buick sedan, owned by appellee, and the execution of a note for $825, which note was paid at or about its maturity in April, 1930. On the date of the purchase, the 1929-47 Buick was an obsolete model, in that the 1930 Buick had been placed on the market in July, 1929, and because of this fact, appellant had reduced the sales price of all 1929-47 models when they ceased to be current models; the former sales price of the particular car appellee purchased had been approximately $1,785. The reduced price had existed since about the time the new models were displayed in July, 1929.

· Appellee knew that he was buying an obsolete model, but was informed and believed that it was a new car; that is, one that had never been subjected to use, and he would not have considered the purchase of any car that had theretofore been used. He paid the purchase price for a new car of the model and character of car he purchased. The car was purchased from a sales agent of appellant, assisted by W. G. Langley, the head of appellant's sales department.

The car began to give trouble soon after the purchase was made, and had to be taken to a service station a great many times. Soon after appellee paid the note, the balance due on the car, he received hearsay information that the car had been wrecked, on or about July 4, 1929, by one of appellant's salesmen, and had undergone material repairs, was not an unused car, but, on the contrary, was a car that had been through a serious wreck and had undergone extensive repairs. At the time of such wreck, appellant's corporate name was Worsham-Buick Company, but on August 20, 1929, by a vote of its stockholders, this corporate name was changed to that of Morriss-Buick Company; but it remained the same corporation, except as to the change in name. Appellee investigated the report as to the car he had bought and found, from appellant's former mechanic, who repaired the car, that it had been wrecked and rebuilt. He then went to Langley, appellant's sales manager, and demanded an adjustment. This sales manager had entered appellant's employ after the car had been wrecked and rebuilt, and he informed appellee that he would investigate and let him know. The result was that no conclusion was reached on the adjustment, and suit was at once instituted.

This suit is not a suit for rescission, nor for a breach of contract, for the contract had been performed, but is a suit for damages because of fraudulently selling to appellee a wrecked and rebuilt car, under the representation that it was a new and unused car. The recovery sought is for the difference between the reasonable market value of the car, at the time he was caused to make the purchase by reason of the alleged fraud, and the price he paid for same.

Appellant answered the suit by a general demurrer, a number of special exceptions, a general denial, and a special plea, to the effect that appellee relied on his own judgment in the purchase of the car, knew of the alleged defects, or could have known of them by the use of ordinary care; that he purchased the obsolete model because he believed he might get a better price for his used car, as well as a reduction in the purchase price; further, to the effect that the car purchased was well worth the amount paid.

All of the facts material to appellee's recovery rest on disputed evidence, except the purchase price, the manner in which such price was paid, and the fact that appellee bought a 1929-47 Buick sedan, then an obsolete model. The disputed issues of fact were submitted to the jury on special issues, in the form of interrogatories, and on them the jury made the following findings: (1) That the car appellant sold appellee on October 5, 1929, had been damaged in a wreck prior to said sale; (2)

that appellee, at the time he purchased said car, was ignorant of its previous damaged condition; (3) that appellee would have refused to purchase said car, had he known it had been previously damaged in a wreck; (4) that appellee could not, by the exercise of ordinary care, have discovered the fact that the car had been damaged in a wreck prior to the date of the purchase; (5) that the reasonable cash market value of the car purchased by appellee October 5, 1929, was $850; (6) that appellant willfully concealed from appellee the fact that said car had been damaged in a wreck; (7) that appellee is entitled to exemplary damages in the sum of $200.

The court correctly defined the term "ordinary care," in connection with special issue No. 4, correctly defined the term "reasonable cash market value," in connection with special issue No. 5, correctly defined the term "willfully concealed," in connection with special issue No. 6, and correctly defined the term "exemplary damages," submitted in special issue No. 7. All of these findings on the disputed facts are sustained by substantial evidence, and are adopted as the findings of this court.

The court entered the judgment above described. In arriving at the actual damages sustained by appellee, the court deducted the amount of the value of the car appellee purchased, in the condition it was when delivered to appellee, as found by the jury, from the amount of the purchase price of $1,525, which difference is the $675 item assessed in the judgment as actual damages. If the purchase price of $1,525 had been paid in money, or part in money and part in notes accepted as money, there could be no question raised as to the correctness of the court's method of arriving at the amount of actual damages sustained. The rule is well settled that, in a suit for damages based on fraud in the sale of property, the measure of damages is the difference between the price paid and the market value of the property sold at the time of the sale. 20 Tex. Jur. 190; 27 C. J. 92; 12 R. C. L. 453; and authorities cited in the notes of each.

In the instant case, appellee delivered to appellant his Buick sedan of the 1928-47 model, that had been used by him from date of its purchase, something over a year, for a payment of $700 allowed him on his old car, and the court considered such sum as the equivalent of a cash payment. Was this error? Appellant contends that it was error, for the reasons: (a) That this transaction was an exchange of property, as distinguished from a sale, and that in such a transaction the court is not governed by the value placed by the parties on each piece of property exchanged, but must be governed by the reasonable market value of each piece of property at the time of the exchange, regardless of the trade value placed thereon by the parties; (b) that if the transaction should be construed as a sale, rather than an exchange, the same rule would apply and the $700 value for his old car, as part payment of the purchase price of the new car, does not form a basis for the measure of damages, but the rule would be the same as in the exchange of property; that is, consideration would have to be given to the reasonable market value of appellee's old car, at the time of such transaction, rather than to the value fixed and allowed by appellant at the time the car was purchased.

If this transaction were a mere exchange of automobiles, in which it was contemplated that appellee should pay the difference between the value of his used Buick sedan and appellant's new sedan, appellant's theory as to the measure of damages would be correct. Under the decision of the Supreme Court, in George v. Hesse, 100 Tex. 44, 93 S. W. 107, 8 L. R. A. (N. S.) 804, 123 Am. St. Rep. 772, 15 Ann. Cas. 456, and a long line of decisions following the doctrine announced in such case, of which the B. & H. Motor Co. v. Tucker (Tex. Civ. App.) 299 S. W. 949, is a fair representative, the measure of damages applied by the court is erroneous; such measure of damages would be the difference between the fixed sales price of $1,525 and the $825 represented by the note, augmented by the fair market value of appellee's used car at the time of the transaction.

On the other hand, if the transaction is a sale of appellant's supposed new Buick sedan, of the 1929-47 model, for a consideration to be paid in money, or what was agreed to be the equivalent of money, then the transaction would clearly be a sale and not an exchange of automobiles, and we believe the measure of damages that was applied in the case of Ford v. Sims (Tex. Civ. App.) 190 S. W. 1165, would control under the facts of this case.

It is fairly inferable from the testimony that, at the time of this transaction, ap-

pellant had on hand three 1929-47 model Buick sedans for the purpose of sale, at the fixed price of $1,525. Appellee clearly had in mind the purchase of a new Buick sedan at the purchase price, in money, or what appellant would accept as its equivalent, when the negotiations were had that resulted in the sale to him of one of these obsolete models, for the purchase price of $1,525. In other words, the minds of the parties met on the sale of the car in question for $1,525. Ford v. Sims (Tex. Civ. App.) 190 S. W. 1165; 18 Tex. Jur. 471, and authorities cited in note; Thornton v. Moody (Tex. Civ. App.) 24 S. W. 331; Ullmann v. Land, 37 Tex. Civ. App. 422, 84 S. W. 294; 23 C. J. 185; 23 R. C. L. 1201.

What was the consideration paid for the car? Was it the $825, represented by the note and the fair market value of the used Buick sedan, at the time the sale was consummated? We do not find such to have been the intention of the parties at said time; but, on the contrary, we find that the used Buick sedan, taken in on the sale, was considered by the parties as the equivalent of a cash payment of $700 on the purchase price. This we think necessarily follows from the acts and conduct of the parties immediately preceding the sale. Appellee wanted the value of his used Buick sedan applied to a part of the purchase price. Before he had selected the car he finally purchased, he went with appellant's agent to appellant's skilled appraiser. It appears to have been, in part at least, the office of such person to appraise the cash value of used cars to be taken in on the sale of a new car. This appraiser carefully examined the used Buick sedan, with the result that he placed on the blank furnished by appellant the appraised value of the used car of appellee to be $700. Why was this appraisal made? Apparently, it could have been for no other purpose than to fix the equivalent of cash that appellee would be allowed as a credit on the price of the new car.

The evidence is clearly to the effect that the price of $1,525, placed by appellant as the sales price of the car appellee purchased, was the cash sales price of such car, or what appellant considered as the equivalent to cash. As said in Ford v. Sims (Tex. Civ. App.) 190 S. W. 1165, 1167, under a similar condition, "If the property in Mississippi was valued at a certain sum by the parties and treated as a payment, it should be considered in ascertaining the amount of the damages, as

money paid on the land." So, in the instant case, as appellant had appellee's used car appraised to ascertain its cash value, and the parties in the sale treated the appraised value of said car as a payment on the purchase price of the new car, we must so consider it in ascertaining the amount of damages appellee suffered by reason of appellant's fraud, in selling as new a wrecked and repaired car. As the evidence does not disclose that appellant realized less than the appraised value of the used car, we do not see that it has a valid complaint, because, in measuring damages growing out of its fraudulent act, the court treated such appraised value as money paid on the price of appellee's purchase. If appellant had not received this appraised value for the used car, the evidence of such failure was in its possession and subject to proof. Under such circumstances, the presumption should prevail that appellant realized at least the appraised value of the car. We therefore hold that the court did not err in the manner of computing appellee's actual damages.

■ Did appellee have the right to recover exemplary damages to the extent of a reasonable attorney fee, in prosecuting this suit? Appellant is a corporation, and its sales employee, Smith, represented appellant in making the sale to appellee. Smith was a mere subordinate and not a vice principal. The willful concealment from appellee of the fact that the car appellee purchased had been wrecked and repaired was primarily the act of Smith. Can such willful act be ascribed to appellant, a corporation, Smith's employer? The old case of Western Union Tel. Co. v. Brown, 58 Tex. 170, 44 Am. Rep. 610, formulated the rule of law that should govern under the facts of this case: "It is now the settled law of this State that, to make a corporation liable for exemplary damages, the 'fraud, malice, gross negligence or oppression' which must authorize and justify the same, must have been committed by the corporation itself, or some superior officer representing it in its corporate capacity; or, if committed by a subordinate servant or agent, the act must have been either previously authorized, or subsequently ratified or approved by the company or such superior officer after knowledge of the facts."

The rule above announced has been somewhat modified and restated in an opinion by Chief Justice Cureton, in the case

of Fort Worth Elev. Co. v. Russell, 123 Tex. 128, 70 S.W.(2d) 397, but. in respect to this case, whose facts deal with the act of a subordinate servant, there is no modification of the doctrine announced. In such a case, the act of the servant, found by the jury to be a willful act, must have been either previously authorized, or subsequently ratified or approved to form a basis for exemplary damages against a corporation.

If appellant, through a superior officer, had theretofore pursued the same course of concealment, in respect to the sale of cars in a condition similar to that of the car appellee purchased, then the jury was authorized to find that the act of concealment by Smith was the act of appellant. Appellant's president admitted, on the witness stand, that he considered that, if a new car had been wrecked and repaired, it was still a new car, and that it was the custom of the Morriss-Buick Company, during the year 1929, and since that date, to sell such a car to customers as new cars, without disclosing its true condition. Langley, head of appellant's sales department, gave evidence substantially to the same effect. In fact, as gathered from the testimony of these two witnesses, appellant contended, in the trial of this case, that the car sold to appellee was a new car, notwithstanding the fact that it may have been theretofore wrecked and rebuilt.

We therefore conclude that, under the evidence and findings of the jury on this issue, the trial court was warranted in entering judgment for exemplary damages.

■ Error is assigned on the fact that the court, in defining the term "exemplary damages," charged the jury that the amount of said damages could not exceed $250. This perhaps was technical error, under the authority of Southland Greyhound Lines, Inc., v. Ashby (Tex. Civ. App.) 80 S.W.(2d) 445. This error affected only the item of exemplary damages; and as the claim for exemplary damages is only for a remuneration of the expense of an attorney fee in prosecuting the suit; and as the finding of the jury was for $200, $50 less than the sum named as the maximum, by the court; and as the undisputed evidence by a qualified attorney was that $250 was a reasonable fee, we are constrained to hold that this record affirmatively shows that no harm resulted to appellant by this error. Heiligmann v. Rose, 81 Tex. 222, 224, 16 S W. 931, 13 L. R. A.

272, 26 Am. St. Rep. 804; Texas & P. Ry. Co. v. Huffman, 83 Tex. 286, 18 S. W. 741, 743; International & G. N. Ry. Co. v. Sein, 11 Tex. Civ. App. 386, 33 S. W. 558; Texas & N. O. Ry. Co. v. Carr (Tex. Civ. App.) 42 S. W. 126; International & G. N. Ry. Co. v. Slusher, 42 Tex. Civ. App. 631, 95 S. W. 717, 718.

We have carefully examined all assignments of error not specifically discussed, with the result that we find that none of them show reversible error.

It necessarily follows that, in our opinion, this case should be affirmed, and it is so ordered.

Affirmed.

### On Motion for Rehearing.

PER CURIAM.

Rehearing denied.

BOND, Justice (dissenting).

On the original submission of this case, this court also took submission of the case of Morriss-Buick Co. v. F. C. Pondrom, 84 S.W.(2d) 272, and in reviewing the two cases together, as I view them, both should be reversed. I have expressed opinion dissenting from the majority in the Pondrom Case, and my reasons therein expressed, in the main, are applicable here.

The two cases are similar: Pondrom, on October 2, 1929, purchased of Morriss-Buick Company a 1929–47 model Buick sedan; Huss, on October 5, 1929, purchased a like model; Pondrom testified he was in the market for a new 1930 model, but was induced to purchase a 1929–47 model, on account of a reduction in price; Huss testified to the same thing; Pondrom's contention, supported by evidence, that, on July 4, 1929, the automobile he purchased was the one figured in a collision while being driven by R. B. Irion, with an automobile driven by Dr. Roy Keller; Huss' contention and testimony centers on the same fact; that the automobile he purchased was the one in the Irion-Keller wreck. The photographs of an automobile, the appellee in the Pondrom Case claims to be the Irion-Keller wreck, were offered in evidence in both cases, as were the items of damage and expense of repair for the Irion-Keller damaged automobile. Many of the same witnesses were offered in the two cases to show that the automobile purchased by the aggrieved party in each of the cases was the one figured in the Irion-

Keller wreck. In the Pondrom Case, the testimony is undisputed that there was but one wreck in which a new 1929–47 model sedan was involved, and in this case the testimony centers only on the one wreck of July 4, 1929; the Irion-Keller wreck. Thus, on separate jury trials, the Morriss-Buick Company has suffered two judgments to be rendered against it for an alleged sale of a wrecked automobile, when the uncontroverted evidence discloses there was but one automobile of the kind purchased involved in a wreck on the date mentioned in the evidence.

The evidence further shows that Morriss-Buick Company was the local agent for the handling of Buick automobiles. Appellee, with the view of inspecting the various models on display, visited appellant's place of business. At that time, in the showroom, on the ground floor of appellant's place of business, it had placed the new 1930 models, and on the second floor, the 1929 models. Appellee had a conversation with one Ed. Smith, a salesman, and one Mr. Langley, a sales manager, relative to purchasing a new automobile, in which Mr. Smith told him that he could get a slight reduction in price by taking a 1929 model, because the 1930 models had already come out. A few days later, appellee returned, quoting from his testimony:

"Q. What did you do at that time? A. I looked at cars. They were all there and asked me to choose which one I wanted, and I told them I was interested in the '29 model. They had several 1929 models and they told me to pick the car I wanted, and the only choice was in color.

"Q. Did they tell you they were all new 1929s? A. Yes, sir, 'there they are; they are all alike'; that is what Mr. Langley said.

"Q. Said they were all alike? A. All alike. Help yourself.

"Q. What did you do then? A. I chose the type I wanted and the deal was closed."

It must be noted here that there is no contention whatever that Mr. Smith or Mr. Langley, the only agents of appellant negotiating with appellee in the transaction, knew that the automobile which Huss selected from the floor of the showroom of the Morriss-Buick Company was the automobile which had figured in the Irion-Keller collision, or that it was a wrecked car, rebuilt by the company, if, in fact, it was such a car; but, on the contrary, Mr. Smith testified, quoting from his testimony:

"Q. Did you know at the time you sold the car to Mr. Huss that it was a wrecked, rebuilt car? A. I did not.

"Q. Would you have sold it to Mr. Huss as a new car if you had known it was a wrecked car? A. No, I wouldn't have sold it to him as a new car without telling him it had been wrecked and rebuilt."

Mr. Langley testified, quoting from his testimony:

"Q. Was it brought to your attention by Mr. Morriss or any one connected with the Morriss-Buick Company after you began your connection with the Morriss-Buick Company, that any of those 1929–47 model Buicks had been wrecked and repaired? A. No. No such cars were pointed out to me.

"Q. You don't know anything concerning that new 29–47—that any 29–47 models had been wrecked and repaired and offered for sale? A. No."

Bearing in mind that appellee's cause of action is based on fraudulent representations, that they were made for the purpose of deception, that the appellee relied upon such, and that he was induced thereby to enter into the contract of purchase, in my opinion, it was incumbent on appellee not only to show that the party made untrue representations, but to further show that the party making them knew at the time he made them that they were false.

It may be truly said that the seller is under a duty, down to the moment when the contract is concluded, to disclose all material facts as are within his actual knowledge and are not within the actual or presumptive knowledge of the buyer, then again, it is a safe rule of law, that in negotiating for contracts of certain kinds of property, such as a sale of merchandise, automobiles, the seller must necessarily, and from the nature of such contemplated transaction, be cognizant of facts of which the purchaser must be presumed ignorant, and for the disclosure of which the latter must rely on the good faith of the former to enable him to form a judgment as to the expediency of entering into the contract on the terms proposed.

I take it to be quite clear that if a person makes a representation by which he induces another to take a particular course, it is an imperative duty of the party who has made the representation to communicate to the party to whom the representation has been made the material facts within his

knowledge, and if such facts are not within his knowledge, the misrepresentations so made are not fraudulent.

Obviously, there can be no duty on any one if the fact was not known, because it is an impossibility to communicate or impart to another a knowledge which he does not possess himself. The following from 2 Pomeroy's Equity Jurisprudence (4th Ed.) 1838, § 888, is applicable: "Where a person makes a statement of fact which is untrue, but at the time of making it he honestly believes it to be true, and this belief is based upon reasonable grounds which actually exist, the misrepresentation so made is not fraudulent either in equity or at law."

The uncontroverted evidence of the appellee, substantiated by that of appellant's, is that the parties with whom appellee negotiated the contract of sale did not know the automobile was a wrecked and rebuilt automobile. Then how could it be said that the innocent acts of the party or parties inducing appellee to make the selection of the automobile amounts to fraud, and, indeed, furnishes to appellee the right to exact of appellant exemplary damages? As said in my dissenting opinion in the Pondrom Case, supra, at most, it shows a breach of implied warranty, for which appellee would be entitled only to recover for his actual damage.

To what extent was appellee damaged? The testimony shows that appellee purchased the automobile for "pleasure and business"; that the car performed the same service that he would expect of any other automobile; and that, at the time of the institution of this suit, appellee had driven the automobile in excess of 45,000 miles, more than 1,000 miles per month, more than half of life of usefulness of a new automobile. And, while he has had considerable trouble with it since the purchase, yet, with a fair opportunity of inspection, he neglected to avail himself of it or accord to appellant an opportunity to right the breach of an implied warranty that the automobile was one that appellee could reasonably have expected not to have been involved in a wreck. In the negotiation of the contract, the parties agreed on the price of the automobile appellee received at $1,525, and on the automobile taken by appellant as part of the consideration, the sum of $700; appellee paying the difference between the two by note in the sum of $825.

The evidence does not show that there was a fixed price on the 1929-47 model automobiles, as evidenced in the Pondrom Case, where the same style and model was purchased for $1,389.85, only three days earlier than the sale of the car to Huss, thus the value of each car was fixed only at exchange prices, rather than a fixed purchase price.

Whether there was a sale or exchange, the action is brought purely for the declared purpose of damages for the negotiation of a contract for a certain kind of automobile. Ordinarily, the measure of damages in such action is "the difference between what appellee parted with and what he received." However, it must be borne in mind that appellee had operated the automobile in question for more than three years, and, as stated above, in excess of 45,000 miles, more than 1,000 miles per month. The automobile had rendered to him for pleasure and business the same service as a new automobile would have rendered to him, and appellee had many opportunities to inspect and ascertain the kind of automobile he received. The sale was made innocently of any defects or previous harm done to the automobile. Appellant had no opportunity to right the wrong until the automobile had been run for more than half of the life of usefulness of a new automobile. Thus, in my opinion, it would be a manifest injustice, under the peculiar facts of this case, for appellee to be made whole, as of the date of purchase, with all these attending circumstances.

In my opinion, the difference in the resale value of the automobile appellee actually received at the time of trial, plus the necessary expenses paid attributable to the wreck, and the value of an automobile he should have received, operated for the time and extent, as shown by the evidence appellee had actually operated the automobile, the result should represent appellee's damages. He should not be permitted to recover the difference in contract value of the automobiles, placed on them for the purpose of the transaction, and, in addition thereto, the use and service of the automobiles he received, for the time and mileage as disclosed in this record; especially so, in the light of the innocent acts of appellant's agents and the negligence of the appellee in failing to inspect and notify appellant of the undisclosed fact. The law

does not place a premium on negligence or unreasonable credulity.

At any rate, the measure of appellee's damage should not be more than the difference between the actual value of the used car plus the $825 represented by the note, and the actual value of the automobile received at the time of the transaction. George v. Hesse, 100 Tex. 44, 93 S. W. 107, 8 L. R. A. (N. S.) 804, 123 Am. St. Rep. 772, 15 Ann. Cas. 456; B. & H. Motor Co. v. Tucker (Tex. Civ. App.) 299 S. W. 949; Texarkana Motor Co. v. Brashears (Tex. Civ. App.) 37 S.W.(2d) 773, 775.

In the case of Texarkana Motor Co. v. Brashears, supra, the measure of damages applied was the difference between what appellee parted with and what he received. Quoting from that opinion: "* * * The courts of this state have expressly held that in an action, as here, brought purely for the declared purpose of damages, as redress by a purchaser who has been induced to make the purchase, the purchaser will be awarded in payment the difference between the value of what he parted with and that received in exchange. George v. Hesse, 100 Tex. 44, 93 S. W. 107, 8 L. R. A. (N. S.) 804, 123 Am. St. Rep. 772, 15 Ann. Cas. 456; Greenwood v. Pierce, 58 Tex. 130; Moore v. Beakley (Tex. Com. App.) 215 S. W. 957; Thrasher v. Walsh (Tex. Civ. App.) 228 S. W. 961; Medley v. Lamb (Tex. Civ. App.) 223 S. W. 1048; B. & H. Motor Co. v. Tucker (Tex. Civ. App.) 299 S. W. 949."

In the case of Robert & St. John Motor Co. v. Bumpass (Tex. Civ. App.) 65 S.W.(2d) 399, 401, in which the Supreme Court refused a writ of error, the Eastland court held: "If it be granted that damages for breach of a warranty were claimed, the measure of damages would be the difference between the purchase price of the automobile ($700) and the value of same in its defective condition at the time of the purchase. Gutta Percha & Rubber Mfg. Co. v. City of Cleburne, 102 Tex. 36, 112 S. W. 1047; Alba-Malakoff Lignite Co. v. Hercules Powder Sales Co. (Tex. Com. App.) 235 S. W. 547; Swift et al. v. Roach (Tex. Civ. App.) 266 S. W. 846."

So, in the case at bar, if appellee is to be awarded damages, augmented by the use and service of the automobile for more than three years, more than half of the life of a new one, plus the note and plus interest on the money paid, in no event should the damages be more than the difference in actual value of the two automobiles at the time of purchase. The trade, or contract values, on which the judgment is based, affirmed by this court, should not control.

Furthermore, under the broadest interpretation that can be given to appellee's testimony, even if it be admitted that he purchased an automobile from appellant upon the representation that it was a new automobile, when, in fact, it had been wrecked and rebuilt, still, in view of the undisputed fact that it, in a large measure, served the identical purpose for which it was purchased and was capable of serving those purposes, and there being an utter lack of proof tending to show that appellant's conduct evidenced an intent on its part to injure the appellee or that such conduct amounted to gross negligence, there is nothing to support an award for exemplary damages.

True enough, as held in the original opinion, the actual or presumptive knowledge of the agent Smith, who negotiated the sale to appellee, may be imputed to the principal, and any willful concealment from appellee of the fact that the car purchased had been wrecked and repaired be ascribed to appellant; but, there is not a scintilla of evidence in this record that Smith knew that the automobile he sold to appellee was a wrecked, rebuilt automobile; but, on the contrary, as stated above, the evidence is undisputed that Smith did not know that fact. Then, how can it be said that the innocent acts of Smith would impute a willful conduct to appellant and be such that society demands the exactment of a punishment in the nature of exemplary damage?

I am convinced that the judgment of the lower court should be reversed and the cause remanded, and, so believing, register my dissent to the opinion of the majority on motion for rehearing.