JOE T. CLANCY, RESPONDENT, v. REID-WARD MOTOR COMPANY, A CORPORATION, APPELLANT.—170 S. W. (2d) 161.

Kansas City Court of Appeals. March 1, 1943.

*Harry B. Jenkins, Delos Johns* and *Morrison, Nugent, Berger, Byers & Johns* for appellant.

1002

*Wickersham & Wickersham* for respondent.

1004

[redacted]

SPERRY, C.—This is a suit wherein Joe T. Clancy, plaintiff, sought actual and punitive damages against Reid-Ward Motor Company, a corporation, defendant, based on fraud in the sale of a used automobile by it to plaintiff. Verdict and judgment were for plaintiff and defendant appeals.

There was substantial evidence from which the jury could find that when the automobile, a 1938, Packard Club coupe, was shown and demonstrated to plaintiff by defendant's agents the speedometer registered 25,000 miles; that plaintiff asked if that was the correct mileage and defendant's agents assured him that it was, just like it was when it came into defendant's ownership, that it never turned speedometers back; that defendant believed such representations and statements; that he bought the car in reliance thereon; and that he would not have bought it at all if he had known that the actual speedometer reading was 55,000 miles. During the course of the trial it was stipulated between the parties that the speedometer actually registered 55,000 miles, when it was acquired by defendant a few days prior to its offer for sale to plaintiff, and that defendant turned the speedometer back to 25,000 miles prior to the time plaintiff first saw it.

It was shown in evidence that plaintiff agreed to pay for said automobile the sum of $525; that he paid cash on delivery in the amount of $300 and executed his note and mortgage for the balance, $225; and that he, after discovering the facts as to actual mileage the automobile had been driven, failed to pay the note, which he still owed at the time of trial. Plaintiff alleged the true value of the automobile to be $300, sought compensatory damages in the amount of $225, and punitive damages in the amount of $2500. Defendant denied that plaintiff had suffered compensatory, or was entitled to collect punitive, damages. It counterclaimed on the note for $225 principal, interest from date of sale to date of trial at eight per cent, and asked for ten per cent attorney fees. The jury's verdict was for plaintiff on his petition, and assessed his actual damages at $283.80 and his punitive damages at $2500; and it found for defendant on its counterclaim for principal, interest and attorney fees on said note, in the total sum of $283.80.

The verdict was returned prior to October 4, 1941, and, on the last mentioned date, defendant filed motion for new trial.

It is then recited in the judgment record as follows:

". . . this matter coming on for hearing upon defendant's motion for a new trial the parties hereto appear by their respective attorneys. The defendant, in open court, remits the sum of $58.80 from the verdict of the jury upon its counterclaim herein. Plaintiff files *remittitur* herein reducing the verdict of the jury for actual damages upon his petition down to the sum of $225. And in order to make said *remittiturs* effective it is ordered by the court that the judgment heretofore rendered herein be and the same is hereby set aside and in lieu thereof the following judgment be and the same is hereby entered herein:

"Wherefore, it is ordered and adjudged by the court that plaintiff have and recover of and from defendant the sum of $2500 as punitive damages with interest thereon at the rate of 6% per annum from October 1, 1941, the date of the verdict herein, together with the costs of this cause, and have therefor execution."

The court then overruled the motion for new trial and in arrest.

Defendant introduced in evidence a written contract of sale signed by both parties to this action at the time the contract of sale was made. It is recited therein that no representations as to mileage on the car have been made and that plaintiff takes it as a used car in its then condition, at the agreed price. It is defendant's contention that parol evidence should not have been received, over its objection, to vary the terms of the written contract; and that all negotiations and discussions had prior to the sale must be conclusively held to have been included in the written contract which was the ultimate result of such negotiations. Ordinarily, defendant's position would be correct; but this is an action for fraud and, therefore, that rule has no application. [National Theatre Supply Company v. Rigney, 130 S. W. (2d) 258, l. c. 262; Smithpeter v. Mid-State Motor Company, 74 S. W. (2d) 47; Jones v. West Side Buick Auto Company, 93 S. W. (2d) 1083; Nash Mississippi Valley Motor Company v. Childress, 125 So. 708, l. c. 709.] The last-mentioned decision puts the exception to the rule on written contracts in fraud cases very clearly.

The misrepresentations as to the mileage the car had traveled prior to its sale were knowingly and fraudulently made with intent to mislead plaintiff. The jury would have found it difficult to put any other interpretation on the evidence in view of the facts and circumstances surrounding this transaction, to-wit: the difficulty encountered by plaintiff in learning the true facts concerning the speedometer reading; the lack of cooperation by defendant in this connection; and, lastly, when the facts had been obtained and plaintiff's evidence on the subject was virtually complete, the fact that defendant broke down and stipulated that it had turned the speedometer back from 55,000 miles to 25,000 miles and offered no explanation for doing so. The evidence supports a jury finding to the effect that defendant was guilty of fraud with legal malice; and since the jury found the

issues for plaintiff on its petition its verdict was supported by the evidence both for actual and punitive damages. [Jones v. West Side Buick Auto Company, 93 S. W. (2d) 1083, l. c. 1088, *supra,* and decisions there cited.]

However, defendant urges that there was no .substantial evidence which tended to prove that plaintiff was actually damaged; that the evidence discloses that defendant "got a bargain" even though the automobile had been run 30,000 miles further than plaintiff was led to believe, and did believe, that it had been run; and that the automobile, in fact, at the time of its purchase, was nevertheless worth far more than the price paid. It is true that defendant's evidence did tend to establish these facts; but plaintiff's evidence was to the effect that he would not have purchased the car at all if he had known it had been operated 55,000 miles. Some witnesses testified that two cars of the same quality, if similarly cared for and treated by the same person and if one were driven 55,000 miles, and the other 25,000 miles, the latter would be worth $200 more than the former. Other evidence tended to prove that the car in question had a potential mileage, when new, of 100,000 miles and was worth $1200 or $1300, and ·that its value as a used car depended, to some extent, on the unuseq mileage. There was ample evidence upon which to base a finding to the effect that plaintiff suffered compensatory damages because of the acknowledged deceit practiced on him. [Nash Miss. Valley Motor Company v. Childress, 125 So. 708, l. c. 709, *supra.*]

Defendant contends that the amount of plaintiff's verdict for actual damages indicates a design on the part of the jury to prevent plaintiff from being out more than the exact amount which was assessed against him on defendant's counterclaim, based on the note, interest, and attorney's fees. It is true that the verdict for plaintiff's compensatory damages was for the sum of $283.80, and that the verdict on defendant's .counterclaim was for exactly, to the cent, the same amount. Defendant says .this is no coincidence but indicates a studied effort to accomplish a definite result; that it is obviously a compromise verdict and cannot and does not rest on sufficient evidence, so far as plaintiff's damages are concerned, because plaintiff asked judgment, on this feature, for only $225. .

It cannot· be said, from all the facts, that defendant's contention in this regard, is true.

Un'der instruction "H", *offered* by *defendant,* the jury was directed to return a verdict on the counterclaim for $225, "to which you *may* add interest at eight percent per annum from Dec. 2nd, 1939, and an attorney's fee of ten percent." (Italics ours.) Thus, if the jury had been actuated by passion against defendant it need not have given it a verdict for more than $225, under defendant's drawn and submitted instruction; and it had *no.* power, thereunder, to return a verdict for more than the following amounts: Principal, $225; inter-

est, $16.67; attorneys fees $24.17, total, $266.84. It is obvious that a mistake was made by the jury in its calculations, or that it figured a "handling charge" on the deal for defendant motor company. The verdict for defendant was generous to the point of error. How or why that error was committed neither we nor defendant can know; but it is apparent that its passion and prejudice against defendant did not lead to the error. Nor can we say how or why it erred in favor of plaintiff, giving him too, a verdict in excess of the amount for which he prayed. Possibly it attempted a formula, such as suggested by counsel for respondent, that is, that since the value of a used car is measured by the mileage that the purchaser sought to buy and, since he actually got 54½ per cent less mileage than that for which he paid, $525, the jury thought it should give him such damages as, in their judgment, he had suffered, whether he wanted it or not. The fact that this jury allowed both parties a verdict for more than either asked but proves that neither judges, nor lawyers, nor litigants can know what is in the mind of a juror when he sits in judgment. That knowledge reposes solely in the breast of the juror, and of the Almighty. Concluding this speculative-philosophical indulgence we can only say that, whatever the verdict may indicate, it does not indicate either a compromise verdict or one directed by passion and prejudice against defendant.

From the record it appears that neither plaintiff nor defendant, (nor the trial judge) attempted to solve the riddle of the verdict. Both parties simply remitted the part that was non understandable. After noting said *remittitur,* the judgment record recites:

"And in order to make said *remittiturs* effective it is ordered by the court that the judgment heretofore rendered be and the same is hereby set aside and in lieu thereof the following judgment be and the same is hereby entered herein:

"Wherefore, it is ordered and adjudged by the court that plaintiff have and recover of and from defendant the sum of $2500.00 as punitive damages . . . "

Apparently defendant filed no new motions or exceptions and the court treated the original motions for new trial and in arrest of judgment as refiled, and overruled them. The court, in effect, after both parties had voluntarily remitted the excess of the verdict in favor of each, off-set the $225 judgment of plaintiff as against defendant's judgment for the same amount. Ordinarily, courts have power to so act. [34 C. J. 701.] Off-setting judgments is one mode of satisfaction. [14 Lea (82 Tenn.), 13, l. c. 14.] The court satisfied the judgment for compensatory damages which defendant now says was excessive; but defendant assigned no error to that action of the court, although it was present in court, by counsel, when it was done. It is not shown that the judgment was the result of bias and prejudice and, if it was, it has been paid off and satisfied; and defendant made

no complaint to the trial court of its action in so doing, and does not here complain; nor did it set it up in its motion for new trial. Any error regarding the *amount* of the judgment is cured if complainant voluntarily pays it; and if it is satisfied by the court, and no action taken challenging said action or preserving any claimed error in that regard, it is, for purposes of appeal on that question, as though the judgment had been voluntarily paid.

Defendant complains that the court erred in refusing to strike the entire testimony of witness Martin on the grounds that his evidence was based entirely on the "Blue Book", an automobile trade book which purports to lay down arbitrary rules for the valuation of used cars. We are not to be understood as holding that the "Blue Book" is a scientific work and admissible in evidence to establish controverted facts; nor is it the law that one may read or quote such a book in evidence, not of itself an authority, and thus indirectly bring in evidence. The witness, throughout his testimony in chief, purported prove that the "Blue Book" is such an authority as to be admissible in evidence. The witness, through out his testimony in chief, purported to testify as to facts learned by him during twenty years of judging values of used automobiles, by purchasing, trading for, and dealing in them. He testified, according to the record, from facts he himself had learned in the course of his long experience. Such testimony was competent. On cross-examination the witness referred to the "Blue Book" as his authority for an answer there given. Upon objection by defendant and motion to strike, the court ordered stricken that part of his testimony relating to the "Blue Book." Thereafter, he was questioned further by defendant's counsel about the "Blue Book," and counsel moved to strike all of his testimony. This motion was denied. It appears that the court understood that witness had testified in chief as to his own knowledge and experience; which he had done. The motion to strike was properly overruled.

Lastly, defendant complains that the judgment for exemplary or punitive damages is so grossly excessive as to indicate that it is the result of bias and prejudice. The first premise upon which it rests this contention is that the excessive verdict for actual damages indicates that the jury was imbued with a determination to "soak" defendant because of its bias and prejudice, and that said bias and prejudice permeated its collective mind when it assessed what, defendant contends, is an excessive amount as exemplary damages. What we have already said disposes of this feature of the case. We cannot say that the excessive verdict for actual damages was caused by bias and prejudice and, consequently, that verdict cannot carry over into the verdict for exemplary damages and stultify the latter on the basis of the grounds urged.

It is next contended that, since plaintiff sustained no actual damages, there can be no foundation whatever upon which to rest a verdict

for punitive damages. We have held that the jury had before it sufficient substantial evidence upon which to base a verdict for compensatory damages. The jury found the issues on that question for plaintiff, and its finding, in that respect, is binding on the court. It is not necessary that the *amount* of actual damages sustained by a plaintiff be measurable or measured, in order to justify a verdict for punitive damages on that ground alone. [State ex rel. v. Shain, 108 S. W. (2d) 351, l. c. 356.]

It will be noted in the last cited decision that the Supreme Court points out (as did this court also in Gerharter v. Mitchellhill Seed Company, 157 S. W. (2d) 577, l. c. 582), that among the elements proper to be considered in assessing punitive damages is "the financial condition of the defendant," and his "intelligence, standing and affluence." While there is no evidence in this case tending to prove any of the last above-mentioned elements, yet there is evidence tending to establish the degree of "malice, criminality, or contumely characterizing the act." However, defendant does not urge here that the verdict may be excessive because of a failure of evidence in the respects above mentioned; and that matter is not in this case. We note, however, in passing, that we commented on the affluence of defendant in Gerharter v. Mitchellhill Seed Company, *supra*, and upon its financial standing, in approving the judgment of $3000 as exemplary damages in that case. It will be noted that in cases of the character here considered actual damages are measurable whereas, in other types of cases they are not. Whether evidence of such character is a matter for attention of plaintiff in making his case on this point, or for defendant in reducing the amount of the verdict, or for either, at his choice, we do not rule. The matter is not before us. Defendant's contention as to this point is disallowed.

The case of fraud and deceit here exposed is almost identical with that existing in Jones v. Buick West Side Auto Co., *supra*; and the conditions at which the St. Louis Court of Appeals struck in that decision, where the verdict for actual damages was for $150 and for punitive damages was for $2500, are exactly like those here shown. The injection there made has not yet cured the disease for which such heroic remedy was applied by that court. Another similar dosage may prove to be "specific" for a practice that cannot be excused or condoned.

The judgment should be affirmed. *Boyer, C.,* concurs.

PER CURIAM:—The foregoing opinion of Sperry, C., is adopted as the opinion of the court. The judgment is affirmed. All concur.