### RICHARDS
### v.
### PHOENIX MUT. LIFE INS. CO. et al.
### No. 14923.

United States Court of Appeals Eighth Circuit.
Aug. 19, 1954.
Rehearing Denied Sept. 11, 1954.

Edwin M. Bramson and Commodore M. Combs, Jr., Kansas City, Mo., for appellant.

William H. Curtis, Kansas City, Mo. (Morrison, Hecker, Buck, Cozad & Rogers, John A. Morrison and William M. Symon, Jr., Kansas City, Mo., with him on the brief), for appellee.

Before SANBORN, WOODROUGH and JOHNSEN, Circuit Judges.

JOHNSEN, Circuit Judge.

Appellant quit his job in government service at Kansas City, Missouri, to become a life insurance salesman there for Phoenix Mutual Life Insurance Company. He remained with the Company for eight months and then left. After trying his hand with another company for two months more, he gave up the insurance game and returned to government service.

Two and a half years later, he brought suit against Phoenix Mutual, for $25,000 actual damages and $75,000 punitive damages, alleging that he had been the victim of fraud, in that he had been induced to leave the government service and enter the life-insurance field through misrepresentations, concealments and nondisclosures on the part of the Company's Kansas City branch-manager.[1]

The trial court, on motion of the Company, entered a summary judgment against appellant, holding that, on the provisions of the contract, which he had signed, and the facts shown by his deposition, which he did not dispute, his purported cause of action was without any legal substance or reality, which could afford the basis for a recovery by him under Missouri law. The appeal here is from the entering of summary judgment, on the contention that the case was one in which jury issues were involved.

From appellant's deposition and from his brief, it is clear that the gist of his grievance against the Company and his reason for leaving it were that, after he had been with the Company for five months, it refused to give him any further cash advances or "draws," unless he wrote some business. He said that the branch manager told him, "If you get an application, you will get your draw—if you just get an application." He had been permitted up to that time to make draws totalling $990.75, for which the Company had taken his promissory notes. He stayed on for three months thereafter, presumably without getting any applications—at any rate without being allowed any further draws.

The first theory of liability urged in relation to the draw situation was that the branch manager had represented to him, in order to induce him to give up his government job with its assured income, that he would be allowed a draw regularly, in such amounts as would be necessary to provide him with $300 a month for living expenses, until a total of $1,800 was reached, which right would exist regardless of whether he wrote any business or not, and that the branch manager further had stated that this arrangement constituted an established plan on the part of the Company, which it maintained in effect for the benefit of all new agents, such as appellant, who were without previous insurance experience and who were "family men." His deposition showed however, that he admittedly knew that the draws were to constitute loans and not compensation or gratuities.

The written contract, which appellant signed, provided that, "While acting as agent hereunder, the Agent may borrow

---

[1]. The branch manager was named as a co-defendant in the complaint, but apparently no service of process ever was had upon him, and he never actually became a party to the suit.

in any month any amount which added to his first commissions for that month brings the total of both to $300.00, provided his total indebtedness on this account does not exceed $1800.00," and that "Loans will be made without security other than the Agent's unendorsed personal demand note at 5% yearly, but the granting of further loans may be terminated at any time."

His deposition demonstrated, as the trial court pointed out, that, insofar as the formal execution of the contract was concerned, there had been no fraud practiced upon him in getting his signature to the instrument. In this situation, it was the court's view that any attempt by him to prove by parol on a trial that the branch manager had represented to him that he had an absolute right, under the Company's plan, to a draw of whatever he needed to provide him with $300 a month for living expenses, up to a total of $1,800, whether he wrote any business or not, would be incompetent under Missouri law, as having the effect of varying or contradicting the terms of the written contract.

Stated differently, what the court in substance held was that negotiative statements or representations as to a matter which is a direct subject of dealing between the parties, and which is fully and unambiguously covered by the provisions of a written agreement executed by them, cannot be made the basis of a claim of fraud in Missouri, where no deceit or other overreaching has been practiced in relation to obtaining the signature itself to the instrument.

This, however, is not the general rule. In practically all jurisdictions, the parol evidence rule is held to be without application to an action of deceit, in the proving of any fraud by which a party has been induced to enter into a contract relationship. See generally 9 Wigmore on Evidence, 3rd ed., § 2439, p. 125; Restatement, Contracts, § 238, par. (b). "The explanation seems to be that the vital additional element in fraud is the party's state of mind, which neither can be nor is intended to be embodied in the written document, and that hence the (parol evidence) rule does not forbid considering it wherever it is the vital element of the claim." Wigmore, supra, ibid.

Some general expressions have been made by the Missouri courts in discussing the parol evidence rule, which, when read abstractly, may perhaps be argued to support the trial court's view of what the law in Missouri is. But, against these general expressions, there must also be taken into account the more specific expressions which the Missouri courts have made on the subject of fraud itself.

In the early case of Gooch v. Conner, 1844, 8 Mo. 391, 394, the Missouri Supreme Court made this declaration: "The general principle is well established, that where a contract is made, all anterior and contemporaneous stipulations and representations are merged in the written instrument. The rule has, however, not been understood to exclude fraudulent misrepresentations, introduced by a party desiring to avoid the contract, or seeking redress for injuries sustained in consequence of such misrepresentations; nor is there any rule of evidence which would prevent a defendant from availing himself of such fraudulent misrepresentations where the contract induced by the malpractices of the plaintiff is sought to be enforced."

Again, in Metropolitan Paving Co. v. Brown-Crummer Inv. Co., 1925, 309 Mo. 638, 661, 274 S.W. 815, 822, the Missouri Supreme Court, in an en banc case, said: "This is an action for fraud. The plaintiff seeks to recover on account of fraudulent representations, and the fact that the transaction between the parties is evidenced by writing does not prevent the introduction of parol evidence of the fraud, although it may show the parties had an agreement different from that which was thereafter reduced to writing."

Similar direct expressions have been made by the several Missouri Courts of Appeals. Thus, in Horne v. John A. Hertel Co., 184 Mo.App. 725, 171 S.W. 598, 600, the court stated: "The rule that all prior and contemporaneous oral agreements and representations are merged in the written contract entered into by the parties does not apply to fraudulent representations made for the purpose of inducing a party to enter into such contract."

And in Rice v. Lammers, Mo.App., 65 S.W.2d 151, 153, 154, the court, even more dogmatically, declared: "It is the established law in this state that the rules which hold that parol evidence is not admissible to vary the terms of a written contract, and that all prior parol negotiations are merged into a written contract, do not apply where the contract itself is alleged to have been procured by fraud."

Illustrative of how the principle has been applied by the Missouri courts is the comparatively recent case of Clancy v. Reid-Ward Motor Co., 237 Mo.App. 1000, 170 S.W.2d 161, where misrepresentation as to the actual mileage that a used car had been driven was held to be entitled to be proved as a matter of fraud, notwithstanding that its effect was to vary or contradict an express provision in the written contract of sale that no representations as to mileage had been made in the transaction between the parties and that the buyer was accepting the car in its then condition.

There exist also a substantial number of other Missouri cases, to the same unequivocal effect as those above cited, such as Leicher v. Keeney, 98 Mo.App. 394, 72 S.W. 145; Judd v. Walker, 215 Mo. 312, 114 S.W. 979; Ingle System Co. v. Coil, Mo.App., 211 S.W. 904; Messerli v. Bantrup, Mo.App., 216 S.W. 825; National Theater Supply Co. v. Rigney, Mo.App., 130 S.W.2d 258; Johnson v. Dur-Est, Inc., Mo.App., 224 S.W.2d 611; and more which we shall not undertake to set out.

On this formidable array of direct expression on the specific question, we think it must be held that the trial court was mistaken in the view which it took of Missouri law and which it made the basis of entering summary judgment.

The Company argues that, even if the court's view was thus erroneous, the judgment nevertheless is entitled to be sustained, on the ground that the branch manager's alleged representation, that appellant would be given a draw of $300 a month, amounted in any event simply to a promissory warranty and was not in any way a misrepresentation as to a purportedly existing fact. The case, however, is now before us on only the testimony contained in appellant's deposition, and in that testimony there is the direct claim that the branch manager, in explaining the draw arrangement, did not merely promise appellant a draw but represented to him that he had a right thereto as part of an existing system or established plan which the Company maintained in effect for the benefit of new agents, like appellant.

As an example of this testimony, appellant stated at one point in the deposition that the branch manager had told him, "We have a company plan, a plan that is especially designed for family men" and "Under the plan you will get $300 a month." At another point, appellant similarly said, "According to (the branch manager) I was to receive up to $1,800—that was the amount that was made available under this plan, this company plan," and "It was a company plan, that was his reference to it, the company plan."

With only this testimony nakedly before us, we cannot presently declare as a matter of law that what the branch manager said as to the draw arrangement and its applicability to appellant could not in any way be regarded as a misrepresentation of an existing fact but constituted merely a promissory warranty. And, as has been previously indicated, the trial court's decision did not rest on any such holding. In this situation, we do not, of course, reach the question to what extent, if any, under Missouri law, a mere promise regarding the oc-

currence of some future event can constitute the basis of a claim of fraud.

■ Appellant's complaint attempted to set out other alleged bases of fraud, such as the fact that he had been told that he would be required to undergo a training course of only two or three weeks, whereas he was subjected to training of approximately six weeks, during which time he was not allowed any draw, and also that the branch manager had given him incorrect information as to the amounts that other agents with the Company were making in commissions. The trial court regarded these as being of a collateral nature only, in that appellant's testimony showed that they had not in any way been related to his reason for quitting the Company. The matter of their proximateness and substantiality, if any, in the situation as developed in the subsequent proceedings had, will of course be a matter for the court's consideration at that time.

Whether, when the situation has been properly developed, sufficient probative substance will exist, on the evidence as a whole, to leave a jury question, on any of the grounds of fraud charged, will depend on the subsequent proceedings. All we now hold is that the court was not entitled to enter a summary judgment upon the ground that it did, and that it is not possible for us to say legally, as the situation stands before us, that no issue of fact can be involved.

This holding includes consideration of appellee's contention, and of the Missouri authorities cited in support of it, that in some situations a party may be guilty of such negligence in his signing of a contract as not to be entitled legally to escape, on a claim of fraud or other improper overreaching, the effect of what he has done. But the facts as they are presently before us do not entitle us to affirm the judgment here, on the basis that this is one of those special situations which are subject to that unabsolute rule.

Reversed and remanded.