Marion PETSCH, Appellant
(Defendant below),

v.

William A. FLOROM, Appellee
(Plaintiff below).

No. 4485.

Supreme Court of Wyoming.

Aug. 7, 1975.

Frank P. Hill, Riverton, for appellant.

Russell A. Hansen, of White & Hansen, Riverton, for appellee.

Before GUTHRIE, C. J., and Mc-CLINTOCK and RAPER, JJ.

RAPER, Justice.

The defendant-appellant brings this case to us, not relying upon any error in the rulings of the court or its instructions during the trial of the case. He candidly admits that the verdict of a jury will not ordinarily be disturbed where the evidence is conflicting but he claims that this case is outside the general rule for the reasons:

1. That there is no credible or substantial evidence in the record to support the verdict of the jury.

2. That there is no conflict in the credible or substantial evidence submitted in this matter, and all such credible and substantial evidence supports the contentions of the defendant-appellant.

3. That the verdict, as given in this matter, was a result of passion and prejudice.

We are obliged to consider this matter upon the basis of the following standard set out in *Stock v. Roebling*, Wyo.1969, 459 P.2d 780, 784, that:

"* * * We must assume that evidence in favor of the successful party is true, leave out of consideration entirely evidence of the unsuccessful party in conflict therewith, and give to the evidence of the successful party every favorable inference which may be reasonably and fairly drawn from it. [Citing case.]"[1]

1. This rule appears in so many cases that it is impractical to list them. This one is used here only because it was cited by one of the parties. For others, see ☞931(1), 989 and 994(3), Appeal and Error, West's Wyoming and Pacific Digests.

This means we may decide whether there was substantial evidence favorable to the plaintiff without even discussing and reviewing defendant's evidence. We now turn to the plaintiff's evidence and that serving his position.

About May 31, 1973, the defendant-appellant and his wife were the owners and operators of the Sunnyside Trailer Park, Riverton, Wyoming. The plaintiff-appellee, his wife and daughter occupied a space in the court. Both plaintiff and defendant were 66 years of age. At about 5:00 p. m. on May 31, 1973, the defendant went to the trailer space of the plaintiff to inquire about the presence of a large, white, friendly, Husky-type dog the plaintiff had just moments before brought into the park for the first time.

Before approaching the plaintiff, defendant had angrily scolded a little neighbor girl to get her "goddamed dog" back into her own yard. Defendant came up to their place talking loud and told the plaintiff, who had just arrived, that he was not keeping the dog in the park. Plaintiff replied that he had paid his rent and was going to keep and make a show dog out of the animal. Plaintiff's hands were down and defendant hit him hard, twice, knocking him to the ground, where defendant straddled and hit him again, after which defendant kicked the plaintiff for good measure. Defendant then picked up a garden hoe, hit the white dog with it and went chasing after the animal.

The plaintiff in his own testimony denied being an aggressor in any respect. He stated also that when knocked down he was semi-conscious and only faintly recalls being kicked but his wife testified that while plaintiff said nothing after being struck to the ground, he grunted when kicked. He could not talk when lifted to a chair, was dazed, his mouth was bleeding and he was helpless.

Defendant in cross-examination in plaintiff's case in chief, as an adverse party, appeared to take pride in his fistic ability when he described how he "hit hard and fast both times." The jury could well have this same impression we reach from a study of the transcript of testimony. He likewise demonstrated a viciousness when he was asked whether he had hit the dog with a garden hoe, and he replied, "You bet I did[ !]"

Defendant attempted to convince the jury plaintiff took a swing at him before he moved to defend himself. His was the only such testimony, however. A witness some 100 feet away with his view obscured by a picket fence, testified that he did not see plaintiff swing at the defendant but did see plaintiff "waving his arms."

Plaintiff was taken by ambulance to a Casper hospital where he was attended by an otolaryngologist who then performed maxilla facial surgery on plaintiff. Plaintiff had a fracture of the right and left side of the mandible of the lower jaw. It was necessary to cut through each cheek in order to reassemble the bone fragments, drill holes in and wire them together.

The plaintiff was on a liquid and soft diet for about two months and due to a numbness—a lack of sensitivity—in the front part of his chin, tended to slobber and generally suffer from pain, discomfort and disability. His wife said he made a regular mess of his eating. At the time of trial, he still suffered a numbness in his chin and medical testimony was that, "It might continue forever or it might clear in three or four months."

The jury found for plaintiff and returned a verdict in his favor for the following amounts:

| | |
|---|---|
| "For medical, hospital expense | $ 728.45 |
| "For travel expense | 180.00 |
| "For pain of mind and body, and general damage | 6,000.00 |
| "We assess as exemplary, punitive damages | 8,000.00" |
| Total | $14,908.45 |

■ We find nothing confusing, inconsistent, unreasonable, improbable or incredible about plaintiff's evidence as contended

by defendant; he takes the position that because of the interest of plaintiff and his wife, their testimony should be disregarded. Such a position would prohibit litigants from testifying. Defendant's complaints about the inadequacy of the evidence are no more than the grumbling of a disappointed litigant.

The defendant further contends that there is no credible or substantial evidence in the record showing that the act of the defendant was committed maliciously, willfully or wantonly as is required in order to establish punitive damages. *Wilson v. Hall,* 1926, 34 Wyo. 465, 244 P. 1002. He refers us to *Condict v. Hewitt,* Wyo.1962, 369 P.2d 278, 280, laying out the sound rule that, " * * * exemplary damages are not recoverable where there was reasonable excuse for the assault arising from the provocation or fault of the plaintiff, unless the defendant uses unduly excessive or unwarranted force in accomplishing his purpose." The defendant asserts in this case that he was provoked by the cursing of the plaintiff, plaintiff's deliberate violation of the rules of the trailer park and his statement that he would continue to violate the rules, and plaintiff's attempt to strike the defendant. Even though plaintiff's jaw was broken, defendant does not believe excessive or unwarranted force was used under the circumstances. It is his contention that this demonstrates that the jury acted with passion, prejudice and bias and did not confine themselves to the consideration of the substantial credible evidence presented to them.

■ Our resume of the evidence dissipates the defendant's position but we add, to what has already been said, other evidence inconsistent with his stance. There is no evidence that any park rule was violated by plaintiff. Defendant's testimony as to the rule was that a dog must be kept inside a tenant's trailer or near the trailer tied up on 15 feet of chain. Defendant in effect told plaintiff that he could not under any circumstances keep the dog and

plaintiff did not say he would not keep the dog in accordance with the park rule. The only evidence of plaintiff's cursing was defendant's own statement that plaintiff *after* defendant's attack called the defendant a son-of-a-bitch, which, while not acceptable in polite society by some, would be considered by others as appropriate for the occasion. Though the presence of the dog acquired that day as a member of plaintiff's family, may have provoked defendant—without good reason, as we analyze the evidence—he certainly should not be exonerated from his responsibility for breaking another's jaw. In our knowledge and experience and apparently within the perception and experience of the jury, that would be using unduly excessive or unwarranted force to accomplish his purpose of enforcing a dog rule he at that moment had made.

We can recite what has been previously voiced about cases of this sort as laid out in *Hammer v. Town of Jackson,* Wyo.1974, 524 P.2d 884, 886:

"The trouble in dealing with the appeal is that the appellant and his attorney insist on retrying the case and using as evidence in the retrial the testimony of appellant and his witness, instead of the testimony of the prosecution and its witnesses. * * * *"

■ We cannot agree that the verdict for punitive damages is excessive and was prompted by passion and prejudice of the jury. While we have difficulty trying to determine just where and why exists any bias and prejudice, the defendant rather boldly avows that bias and prejudice must exist because the jury disregarded the evidence and argument of the defendant and the award is excessive because it is too much. We are not convinced by such an approach. As said in *Booth v. Hackney,* Wyo.1973, 516 P.2d 180, 181:

" * * * It is settled law in this state that, before a verdict of a jury will be set aside as excessive, it must appear to be so excessive as to denote passion,

prejudice, bias, or some erroneous basis. *Holly Sugar Corporation v. Perez,* Wyo., 508 P.2d 595, 601; *Hack v. Pickrell,* Wyo., 515 P.2d 134 (handed down 10/25/73); *State Highway Commission v. Peters,* Wyo., 416 P.2d 390, 391; *Pan American Corporation v. Like,* Wyo., 381 P.2d 70, 76."

No reasons are advanced why the verdict is excessive. It was for the jury to decide. There is no expert who can tell us what punitive damages should be any more than one can tell us what pain and suffering is worth. The amounts here, in themselves, strike no sensitive nerve, as unconscionable.

■ The amount of punitive damages is largely in the discretion of the trial court. *Wilson v. Hall, supra.* Since the fact-finding function is passed on to the jury and it is left up to that body representing the sense of the community and its view of such matters, the quantity is for the most part then within its discretion.

■ We realize that there may be occasions when a court should set aside a verdict and judgment for punitive damages. While the amount to be awarded rests largely in the discretion of the jury, and taking into consideration the circumstances of each case, the "discretion of the jury is not, however, an arbitrary or unlimited one. The jury is not at liberty to award by way of punitive damages any amount, regardless of how large it may be." 22 Am.Jur.2d (Damages) § 264, p. 359. We find in *Boise Dodge, Inc. v. Clark,* 1969, 92 Idaho 902, 907, 453 P.2d 551, 556, an excellent statement of the governing rule found

in a form of an instruction given by a trial judge and approved:

> " 'There is no fixed or mathematical proportion, ratio, or relation between amount of actual damages and amount of exemplary or punitive damages, which in a proper case may be awarded, but such an award must not be so disproportionate to actual damages sustained as to be result of passion or prejudice rather than reason, and such an award must bear some reasonable relation or proportion to actual damages, and exemplary damages must bear some relation to damages complained of and cause thereof.' "

While we do not say what the proportion ought to be, because the measure is so loose in that regard, it is noted that in *Boise Dodge,* actual damages of $350.00 and punitive damages of $12,500.00 were affirmed. In *Wilson v. Hall, supra,* an assault case very similar to the one before us, actual damages were $500.00 and punitive damages $1,000.00, a figure considered "great" during the economy then existing. The award was approved. While we may deplore the inflationary period by which we are surrounded, we cannot deny its presence. We would hesitate to interfere except in extreme cases, another rather unsatisfactory and flexible gauge but built into the dependence we must and ought to place in the judgment of juries. We should not try to second-guess them but have some good reason to set aside an excessive verdict. We find none here and we have had no help from the defendant.

Affirmed.