LAWRENCE M. DEWEY AND ANOTHER v.
HENRY'S DRIVE-INS OF MINNESOTA,
INC., AND ANOTHER.
HENRY'S DRIVE-IN, INC., APPELLANT.

222 N. W. 2d 553.

October 18, 1974—No. 44037.

*Baudler & Baudler* and *Bryan J. Baudler*, for appellant.
*Leighton, Meany, Cotter & Enger* and *Terence L. Meany*, for respondent plaintiffs.

Heard before Sheran, C. J., and Otis, Scott, and Knutson, JJ., and considered and decided by the court en banc.

OTIS, JUSTICE.

This is an action against a lessee and its guarantor for delinquent rents, taxes, and damage to the leased premises. Plaintiffs executed a lease running to defendant Henry's Drive-Ins of Minnesota, Inc. (hereinafter referred to as Henry's of Minnesota), which defendant Henry's Drive-In, Inc. (hereinafter referred to as Henry's of Illinois), undertook to guarantee. The trial court ordered judgment against both defendants in the sum of $22,782.11, including attorneys fees. The guarantor has ap-

pealed from the judgment and an order denying a new trial, claiming that its guaranty obligations had terminated and that plaintiffs are not entitled to attorneys fees.[1] We affirm.

The principal questions are whether the guaranty has been terminated either by oral modifications of the lease, agreed to by plaintiffs and Henry's of Minnesota, which changed the nature of the obligation undertaken by Henry's of Illinois, or by the failure of plaintiffs to give notice of the default of Henry's of Minnesota.

On October 20, 1960, the plaintiffs, Lawrence and Dagny Dewey, husband and wife, leased to defendant Henry's of Minnesota a tract of land in Austin, Minnesota, on which a drive-in restaurant was to be constructed by the lessee. The lease was for a term of 144 months and contained the following rental provisions: (1) Payment of a minimum monthly rent of $700; (2) payment of 5 percent of the lessee's annual sales in excess of $200,000; (3) payment of the amount, if any, by which the annual property taxes exceeded $1,200; and (4) payment of insurance premiums and utility charges. The building, constructed at lessors' expense, remained their property. The lease implied that the fixtures, machinery, and equipment on the premises were to be the property of the lessee. Insurance proceeds realized from damage to or destruction of the premises were to be used to repair or restore the building to its original condition.[2]

---

[1] Defendant Henry's of Minnesota is in default and bankrupt and has not appealed.

[2] Specifically, the lease provided: "11. If at any time during the term hereof the building or any part of the demised premises shall be damaged or destroyed by fire, explosion, or by perils provided against by extended coverage clauses, irrespective of the proximate cause, Lessee shall immediately but not later than thirty days from the date of the damage or destruction commence to repair or rebuild the said building or other damage in order to restore the same to the same condition as they were in prior to the damage or destruction or if the type of building currently in use by Lessee at other locations be different in any respect, then such rebuilding shall be of such changed design at the Les-

Henry's of Illinois granted Henry's of Minnesota a franchise to use the logo "Henry's,"[3] and executed and delivered to plaintiffs a guaranty, in the following language, of all the obligations undertaken by the lessee:

"FOR AND IN CONSIDERATION of the execution and delivery by the Lessor, Lawrence M. Dewey and Dagny M. Dewey, husband and wife, of the within Lease to Henry's Drive-Ins of Minnesota, Inc., a Minnesota corporation, as Lessee, and One Dollar and other good and valuable considerations, receipt of which is hereby acknowledged, the undersigned Henry's Drive-In Inc. an Illinois Corporation hereby unconditionally guarantees the payment of the rents, all monies and damages to which Lessor would be entitled under said Lease and the performance of all other covenants and agreements by the Lessee, its sublessees and assigns in the within Lease contained should demand be made upon the undersigned by reason of this Guaranty. The undersigned reserves the right to exercise the option to terminate the within Lease as provided in paragraphs 20(a), 20(b), 20(c), and 20(d)

see's cost and expense but not to exceed the amount of insurance proceeds received and shall complete same within 120 days from the commencement date. The proceeds from the fire and extended coverage insurance shall constitute a trust fund and shall be used for rebuilding in accordance with said obligation of Lessee to rebuild and restore the demised premises. Such funds for rebuilding and restoring shall be paid out from time to time upon the proper and satisfactory evidence of completion of the work. If the proceeds received from such insurance exceed the amount required to rebuild said demised premises, the excess thereof shall belong to Lessor. If, in accordance with the next following paragraph, namely No. 12, the demised premises are not rebuilt or restored, the insurance proceeds shall be paid to Lessor. From the date of such fire or other casualty and until said premises are fully restored to their former condition, the minimum rent due hereunder shall abate either entirely or proportionately as the case may be."

[3] As a part of the franchise, Henry's of Illinois was to receive the proceeds of 1 percent of the sales of Henry's of Minnesota and to guarantee the lease. The two corporations were otherwise entirely separate.

369

thereof, and subject to and upon compliance by the undersigned with the terms and conditions as contained in said paragraphs."

Henry's of Minnesota made monthly payments from March 1961, when the drive-in restaurant was completed, through February 1970. In 1965, a fire damaged the premises, making the building unusable for a period of 2 months. Thereafter, plaintiffs and Henry's of Minnesota agreed to use the fire insurance proceeds to add 480 square feet to the restaurant by enclosing the front overhang with glass and to put in booths. Contrary to the terms of the lease, Henry's of Minnesota continued to pay rent while this remodeling was taking place.

Although Henry's of Minnesota remained in possession through August 1970 and kept promising to pay rent, none was paid after February 1970. On or about September 1, 1970, plaintiff reoccupied the premises after Henry's of Minnesota abandoned them and removed all the fixtures and equipment. By letter of August 31, 1970, plaintiffs first notified Henry's of Illinois of the default of Henry's of Minnesota. No formal action has been taken by any party to terminate the lease.

1. Henry's of Illinois contends that the agreement entered between plaintiffs and Henry's of Minnesota, after the 1965 fire, constituted a material change in the terms of the written lease which discharged the obligation of the guarantor. Such expansion, it is argued, increased the value of the building and the likelihood that taxes on the property would thereby exceed $1,200. Henry's asserts that the expansion of the building also increased utility charges and that the enlargement of the drive-in and the installation of booths changed the basic nature of the business by allowing customers to eat inside. In addition, it is urged that the original lease was changed after the 1965 fire by an agreement that the fixtures and equipment would become the property of the lessors.[4] By granting lessors the title rather than a

---

[4] With respect to the fixtures and equipment, the terms of the 1965 agreement are not clear. The testimony was inconsistent.

security interest, Henry's of Illinois was denied the benefit of having such property offset by plaintiffs against the indebtedness of Henry's of Minnesota. Finally, Henry's of Illinois points out that Henry's of Minnesota continued to pay rent after the 1965 fire while repairs were in progress although the lease provided for an abatement of rent during that period.

We have considered all of these arguments and hold that none of the changes made in the original lease materially altered the burdens imposed on Henry's of Minnesota. Thus, the obligation of the guarantor was not discharged.

It is the general rule that a material alteration in the principal contract, made after execution of the guaranty contract and without consent of the guarantor, discharges the guarantor if the alteration adversely affects the guarantor's interests. Clark v. Otto B. Ashbach & Sons, Inc. 241 Minn. 267, 276, 64 N. W. 2d 517, 523 (1954); Schmidt v. McKenzie, 215 Minn. 1, 9, 9 N. W. 2d 1, 5 (1943). Henry's of Illinois did not prove that taxes or utility payments were increased because of the remodeling. On the contrary, there was testimony that the taxes were increased annually and all were affected by a general reassessment of the entire city of Austin in 1971. Moreover, there was testimony that Henry's of Illinois acquiesced in the expansion of the building after the 1965 fire.

2. Henry's of Illinois also bases its claim that its guaranty was terminated on lack of notice that Henry's of Minnesota was in default in February 1970.

Our decisions do not support a holding that apart from contract a lessor has a duty to inform a guarantor of the lessee's default. We have stated in Midway Nat. Bank v. Gustafson, 282 Minn. 73, 79, 165 N. W. 2d 218, 223 (1968):

"* * * [T]he creditor is not obliged to look after the interests of the surety; ordinarily, it is up to the surety to see to it that the principal performs his duty. 18 Dunnell, Dig. (3 ed.) § 9093. * * * Under the terms of this guaranty we see no need to discuss appellants' contention that they are relieved of liability

because the bank did not notify them of the obligations of All Star from time to time."

Although Henry's of Illinois acknowledges that past decisions of this court have not required notice, imposition of that duty is here urged because it is alleged the guarantor was denied the right to terminate the lease and to mitigate its damages. However, the lessee's option to terminate the lease upon payment of a specific sum was not available to the lessee while in default on rent payments.[5] Furthermore, Henry's of Illinois did not actually terminate the lease under paragraph 20 after plaintiffs did notify them of the default.

Finally, it seems unlikely that Henry's of Illinois did not know of the financial difficulties of Henry's of Minnesota in view of the fact the Minnesota corporation became bankrupt. The particular drive-in in Austin, here under consideration, was only one of many such establishments operated by Henry's of Minne-

---

[5] The argument by Henry's of Illinois to the effect that damages could have been mitigated by early notification of the default of the lessee, Henry's of Minnesota, rests upon the following lease provisions:

"20. 'Option to Terminate Lease'

"Lessee is hereby given the right, privilege and option to terminate and cancel this Lease at any time after five years from the date of commencement of the term of this Lease in accordance with the following provisions:

(a) Upon payment by Lessee to Lessor of the sum of $35,000.00 specified in this Lease as the cost of construction prorated over the term of the within Lease and which payment shall be for the remaining unexpired portion of the within Lease, and in addition,

(b) Upon payment by Lessee to Lessor of ten per cent of the rent due for the unexpired portion of the within Lease,

(c) This option to terminate shall be applicable only to the original term of this Lease and not to any extensions, options or renewals thereof.

(d) Notwithstanding anything to the contrary herein, Lessee shall not have the right to terminate this Lease under the terms of this paragraph 20, *if at the time of such attempted termination Lessee is in default in any of the provisions of this Lease.*" (Italics supplied.)

sota. Henry's of Illinois, which franchised all of the drive-ins and looked to them for a percentage of profits, must have known from its failure to receive income that the Minnesota corporation was in trouble.

3. As to the lessors' right to the attorneys fees awarded by the trial court, it is the general rule that they are not recoverable unless they are expressly authorized by contract or by statute. Midway Nat. Bank v. Gustafson, 282 Minn. 73, 82, 165 N. W. 2d 218, 224 (1968); 5B Dunnell, Dig. (3 ed.) § 2523. Attorneys fees are mentioned in paragraph 21 of the lease as follows:

"In addition to any other remedies of the Lessor and in the event of the termination of this Lease as aforesaid, Lessee covenants and agrees to indemnify and save harmless Lessor from any loss arising from such termination and re-entry and pursuance thereof and to that end, Lessee covenants and agrees to pay to Lessor after such termination and re-entry at the end of each month of the demised term the difference between the net income actually received by Lessor from the demised premises during such month and the rent agreed to be paid by the terms of this Lease during such month together with the expenses of reletting and altering the improvements on said demised premises together with commissions and attorneys' fees."

This provision seems designed to reimburse plaintiffs for expenses incurred by termination of the lease. We hold that the language of the guaranty "unconditionally guarantee[d] the payment of the rents, all monies and damages to which lessor would be entitled under said Lease," is sufficiently broad to include lessee's duty to pay attorneys fees under paragraph 21.

Affirmed.