May V. WILSON and National City Bank of Minneapolis as Conservator of the Estate of May V. Wilson, Plaintiffs,

v.

COLONIAL PENN LIFE INSURANCE COMPANY, Defendant.

No. 4–77 Civ. 351.

United States District Court,
D. Minnesota,
Fourth Division.

June 30, 1978.

Thomas W. Wexler, Peterson, Engberg & Peterson, Minneapolis, Minn., for plaintiffs.

Theodore N. Treat, Jr., Peterson, Holtze & Treat, Minneapolis, Minn., for defendant.

## MEMORANDUM ORDER

ALSOP, District Judge.

On September 14, 1977, the plaintiffs commenced this action in the District Court of Hennepin County, Minnesota. The complaint alleged that the defendant had breached a hospital indemnity insurance contract and claimed contract damages in the amount of $4,900.00 and punitive damages in the amount of $100,000.00. On October 6, 1977, the defendant, a Pennsylvania corporation with its principal place of business in that state, removed the action to this court pursuant to 28 U.S.C. §§ 1332 and 1441. On December 21, 1977, the defendant filed its motion for partial summary judgment on the plaintiffs' claim for punitive damages. On April 26, 1978, the plaintiffs filed a motion for leave to amend their complaint. The proposed amended complaint is in four counts. Count I alleges breach of the hospital indemnity insurance contract and seeks contract damages in the amount of $4,900.00 and attorney's fees in the amount of $5,500.00. Counts II, III and IV purport to state claims of tortious interference with physician-patient relationship, interference with legal process, intentional infliction of emotional distress and breach of the plaintiff's right of privacy. The plaintiffs characterize those claims as independent torts which accompanied the defendant's breach of contract and seek punitive damages in the amount of $100,000.00.

It is clear that leave to amend a complaint should be "freely given when justice so requires." Rule 15(a), Fed.R.Civ.P. In order to permit the plaintiffs to bring before the court all of the claims which they wish to assert against the defendant, the court will grant the plaintiffs leave to file their amended complaint. In order to avoid further protracting these proceedings, the court will proceed to pass upon the defendant's motion for partial summary judgment as it relates to the amended complaint.

The plaintiffs characterize Count II as a claim alleging tortious "interference with

what is in essence a contractual relationship between May Wilson and the medical personnel who treated her" and an "interference with legal process." The essential factual basis of these claims can be gleaned from the pleadings and from the affidavits on file. It is undisputed that the defendant issued a certificate of hospital indemnity insurance to the plaintiff May V. Wilson. It seems, and the court will assume for the purpose of this motion, that the insurance policy was in effect at all relevant times. The plaintiffs assert that subsequent to the policy's issuance the plaintiff May V. Wilson was hospitalized at the Hospital Del Socorro, Nogales, Senora, Mexico; that subsequent to her release from the hospital the plaintiff May V. Wilson filed a timely and proper claim for benefits allegedly due pursuant to the terms of the policy; that thereafter, during an investigation of the plaintiff May V. Wilson's claim, an agent of the defendant intimidated the doctor and other hospital personnel who treated the plaintiff May V. Wilson;[1] and that as a result of that intimidation the plaintiffs have encountered difficulty in obtaining medical records and other information which they seek in order to document their claim.[2]

The court is convinced that the facts and allegations underlying Count II fail to state a claim of tortious interference with the plaintiff's relationship with the physician and other medical personnel who treated her. Even if the law of Minnesota[3] created such a cause of action,[4] the plaintiffs would not state an actionable claim.

In order to be entitled to relief on a claim of interference with the physician-patient relationship, the plaintiffs would be required to prove that medical services and treatment due to the plaintiff May V. Wilson had been wrongfully withheld or terminated and that the defendant had wrongfully caused the withholding or termination of those services. *Hammonds v. Aetna Cas. & Surety Co.*, 237 F.Supp. 96, 98 (N.D.Ohio, 1965) (applying Ohio law); *see also* Annot., "Liability in Tort for Interference with Attorney-Client or Physician-Patient Relationship," 26 A.L.R.3d 679, 704–06 (1969). It is clear that any wrongful activity on the part of the defendant necessarily began some time after the plaintiff had terminated her relationship with the Mexican physician and the other hospital personnel and had left their care. Because the physician-patient relationship had been terminated voluntarily at a time prior to all of the defendant's allegedly wrongful conduct, the defendant cannot be held liable for causing the relationship's termination.

Likewise, the court is convinced that the facts and allegations in support of Count II fail to state a claim of interference with legal process. First, the court is aware of no reported case nor any treatise which recognizes a cause of action sounding in tort denominated as interference with legal process. *Cf.* W. Prosser, *Law of Torts* §§ 119–121 (4th ed. 1971); Restatement (Second) of Torts §§ 653–682 (1977).[5] Second, even if the law of Minnesota were to create such a cause of action,[6] it seems

1. The investigation was carried out during the months of February and March of 1976.

2. The plaintiffs state that they now have obtained copies of the appropriate medical records.

3. The parties have stipulated that the substantive law of Minnesota is to be applied. *Cf. Ruhlin v. New York Life Ins. Co.*, 304 U.S. 202, 58 S.Ct. 860, 82 L.Ed. 1290 (1938); C. Wright, *Law of Federal Courts* § 57 (2d ed. 1970).

4. The court is obligated to apply state law as declared by statute or by opinion of the state's highest court. *Erie R. R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). In the absence of a Minnesota statute or Minnesota

Supreme Court decision, the court is obligated to determine the ruling that the Minnesota Supreme Court would adopt. *See Meredith v. City of Winter Haven*, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9 (1943); C. Wright, *Law of Federal Courts* § 58 (2d ed. 1970). The court concludes that the Minnesota Supreme Court would not recognize such a cause of action.

5. Obstruction of legal process is prohibited as a crime under Minnesota law. Minn.Stat.Ann. § 609.50 (1978 Supp.).

6. The court concludes that the Minnesota Supreme Court would not recognize a cause of action for interference with legal process. *See* n. 4, *supra*. Moreover, if Count II were to be

clear that Count II fails to state a claim. The plain language of "interference with legal process" contemplates an intermeddling with or hampering of a presently pending legal proceeding. *See, e. g., Findlay v. McAllister,* 113 U.S. 104, 5 S.Ct. 401, 28 L.Ed. 930 (1885); *Michalson v. All,* 43 S.C. 459, 21 S.E. 323, 49 Am.St.R. 857 (1895). The facts here set forth demonstrate that all of the defendant's actions upon which the plaintiffs premise their claim of interference with legal process occurred at least seventeen and one-half months prior to the time at which the plaintiffs commenced legal proceedings. Therefore, there was no presently pending legal proceeding with which the defendant's allegedly wrongful actions might have interfered, and Count II fails to state a claim.

Likewise, even if Count II were to be construed as a claim that the defendant somehow caused the plaintiffs to delay their commencement of this action, it would still be subject to dismissal for failure to state a claim. It is true that Count II could be construed to allege that the defendant's actions caused the plaintiffs to delay their bringing an action to enforce their rights under the insurance policy. However, there is no allegation that the delay resulted in some right's being barred by the statute of limitations or that the insurance company had become insolvent and the value of the plaintiffs' claim against the company was thereby diminished. Mere delay without other injury is not actionable. *Cf.* 86 C.J.S. *Torts* § 44 (1954). Therefore, Count II fails to state a claim.

The plaintiffs characterize Count III as one alleging a "malicious bad faith settlement technique," i. e., "interference with a contractual right in the policy." The court is aware of no Minnesota statute or case which creates such a cause of action and concludes that the Minnesota Supreme Court would not recognize such a cause of action.[7] Even if the court were to permit the plaintiffs to assert a claim of malicious bad faith settlement technique,[8] the court would be of the opinion that the elements of such a tort would approximate those of the tort of intentional infliction of emotional distress. *Cf.* Restatement (Second) of Torts § 46 (1965); *Fletcher v. Western Nat'l Life Ins. Co.,* 10 Cal.App.3d 376, 89 Cal.Rptr. 78 (1970) (elements of tort of intentional inflict of emotional distress include outrageous conduct by defendant and plaintiff's suffering severe emotional distress). The factual underpinning of the plaintiffs' claim of malicious bad faith settlement technique is that the defendant offered to settle the plaintiffs' contract claim by offering to pay a substantial portion of the amount sought on the condition that the plaintiff May V. Wilson surrender her policy. The defendant communicated the offer to the plaintiff May V. Wilson's attorney. The court is convinced that a settlement offer communicated to an attorney would not form a basis for concluding either that the defendant's conduct was outrageous or that the plaintiff May V. Wilson[9] suffered severe emotional distress. Because there would be no basis for reaching such conclusions and because such conclusions would be essential elements of a well-founded claim of malicious bad faith settlement technique,

construed as one for damages incurred because the plaintiffs were compelled to resort to their legal remedies, it clearly fails to state a claim upon which relief can be granted. ﹐*See Smith v. Chaffee,* 181 Minn. 322, 232 N.W. 515 (1930).

7. *See* n. 4, *supra.*

8. The plaintiffs directed the court's attention only to 43 Am.Jur.2d, *Insurance* §§ 454–59 (1969). That chapter is inapposite; it deals only with an insured's remedy for an insurer's wrongful cancellation of coverage and for an insurer's wrongful inducement of the insured to surrender his policy. Neither of those situa-

tions is in any way analogous to the one of which the plaintiffs now complain. In any event, the remedy for the wrongs described in that chapter is limited to actual damages—the amount of premiums paid plus interest or the face value of the policy. That chapter offers no support for the plaintiffs' contention that they are entitled to punitive damages for the insurer's wrongful conduct.

9. Certainly, the plaintiff National City Bank of Minneapolis is incapable of suffering emotional distress.

the court concludes that that claim must be dismissed.

Moreover, if the court were to treat Count III as a claim that the defendant had acted in bad faith, it would be clear that the plaintiffs have failed to state a claim. The act of bad faith alleged is the defendant's failure to indemnify its insured under the policy. The defendant's failure to indemnify its insured would be a breach of contract, and a bad faith motive in breaching a contract does not convert a contract action into an action sounding in tort. *Wild v. Rarig*, 302 Minn. 419, 441–42, 234 N.W.2d 775, 789–90 (1975), *cert. denied*, 424 U.S. 902, 96 S.Ct. 1093, 47 L.Ed.2d 307 (1976); *Independent Grocery Co. v. The Sun Ins. Co.*, 146 Minn. 214, 217, 178 N.W. 582, 583 (1920); *accord, e. g., Vernon Fire & Cas. Ins. Co. v. Sharp*, 264 Ind. 599, 349 N.E.2d 173 (1976) (applying Indiana law); *MacDonald v. Penn Mut. Life Ins. Co.*, 276 So.2d 232 (Fla.Dist.Ct. App.1973) (applying Florida law); *but see Ledingham v. Blue Cross Plan*, 29 Ill.App.3d 339, 330 N.E.2d 540 (1975) (applying Illinois law); *United States Fidelity & Guar. Co. v. Peterson*, 91 Nev. 617, 540 P.2d 1070 (1975) (applying Nevada law); *United Serv. Auto. Ass'n v. Werley*, 526 P.2d 28 (Alaska 1974) (applying Alaska law); *Gruenberg v. Aetna Ins. Co.*, 9 Cal.3d 566, 108 Cal.Rptr. 480, 510 P.2d 1032 (1973) (applying California law); *Kirk v. Safeco Ins. Co.*, 28 Ohio Misc. 44, 273 N.E.2d 919, 57 Ohio Op.2d 49 (C.P.1970) (applying Ohio law); *Boise Dodge, Inc. v. Clark*, 92 Idaho 902, 453 P.2d 551 (1969) (applying Idaho law).

Likewise, if the court were to treat Count III as a simple claim that the defendant interfered with the plaintiffs' contractual right in the insurance policy, it would be beyond dispute that Count III fails to state a claim. The contract with which the defendant is alleged to have interfered is the insurance policy, a contract to which the defendant was and is a party. A person's breach of his own contract with another is not a basis for an action in tort for interference with contract. W. Prosser, *Law of Torts* § 129, at 934 (4th ed. 1971); *Wild v. Rarig, supra; see also Allison v.*

*American Airlines, Inc.*, 112 F.Supp. 37 (N.D.Okla.1953); *Cannister Co. v. National Can Corp.*, 96 F.Supp. 273 (D.Del.1952). Therefore, Count III must be dismissed.

It seems that Count IV attempts to state a claim of invasion of privacy. Because the plaintiffs seem to contend that the defendant's correspondence with other insurers with regard to the facts of the plaintiff May V. Wilson's hospitalization constitutes publicity given to private information about the plaintiff May V. Wilson, the court will treat Count IV as an attempt to state a claim of the form of invasion of privacy denominated as a public disclosure of private facts, *see* W. Prosser, *Law of Torts* § 117 (4th ed. 1971), or as publicity given to private life. *See* Restatement (Second) of Torts § 652D (1971).

The law of Minnesota has never recognized a cause of action for invasion of privacy. *Hendry v. Conner*, 303 Minn. 317, 226 N.W.2d 921 (1975). Moreover, even if the law of Minnesota did recognize such a cause of action, the communication of information to other insurers is not equivalent to a communication to the general public or to a communication to a group of persons large enough to permit the matter to be regarded as substantially certain to become one of public knowledge. In the absence of such undue publicity there is no actionable violation of the plaintiff May V. Wilson's right to privacy. Restatement (Second) of Torts § 652D, comment *a* (1971); *Hendry v. Conner, supra* at 319 n. 1, 226 N.W.2d at 923 n. 1. Therefore, Count IV must be dismissed.

The plaintiffs characterize Counts II, III and IV as tort claims. They contend that, because the defendant's breach of contract was accompanied by the independent torts alleged in Counts II, III and IV, they are entitled to exemplary damages on their contract claim. *See Wild v. Rarig, supra; Johnson v. Radde*, 293 Minn. 409, 196 N.W.2d 478 (1972); *Whittaker v. Collins*, 34 Minn. 299, 25 N.W. 632 (1885). However, because the court has determined that Counts II, III and IV must be dismissed, it follows that, because the defendant's al-

leged breach of contract was not accompanied by an actionable independent tort, the plaintiffs' claim for exemplary damages also must be dismissed. *Id.; but see* Sullivan, "Punitive Damages in the Law of Contract: The Reality and the Illusion of Legal Change," 61 Minn.L.Rev. 207 (1977).

 As a part of Count I the plaintiffs seek an award of attorney's fees. The general "American rule" does not permit a prevailing party to recover his attorney's fees unless attorney's fees are expressly authorized by contract or by statute. *See, e. g., Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). The plaintiffs candidly concede that the law of Minnesota is in accord with the general rule. *See, e. g., Dewey v. Henry's Drive-Ins of Minnesota, Inc.*, 301 Minn. 366, 372, 222 N.W.2d 553, 556 (1974); *Midway Nat'l Bank v. Gustafson*, 282 Minn. 73, 82, 165 N.W.2d 218, 224 (1968); *Benson Cooperative Creamery Ass'n v. First Dist. Ass'n*, 276 Minn. 520, 530, 151 N.W.2d 422, 428 (1967). Moreover, the plaintiffs are unable to direct the court's attention to any contractual provision or statutory authority that would remove their claim for attorney's fees from the ambit of the general rule. Therefore, the court concludes that the plaintiffs' claim for attorney's fees must be dismissed for failure to state a claim upon which relief can be granted.

 Because the court has determined that Counts II, III and IV and the plaintiffs' claim for attorney's fees must be dismissed, the only claim that remains is the plaintiffs' claim for contract damages. Because the plaintiffs' contract claim seeks damages of only $4,900.00 and because the court's jurisdiction is premised upon diversity of citizenship and an amount in controversy which exceeds $10,000.00, *see* 28 U.S.C. §§ 1332 and 1441, the court's dismissal of Counts II, III and IV and of the plaintiffs' claim for attorney's fees resolves the facets of the case upon which the court's subject matter jurisdiction is premised. Because the court's jurisdictional basis has vanished and because there has

been no substantial commitment of judicial resources to this matter, the court deems it appropriate to remand the case to the state court from which it was removed. *See Murphy v. Kodz*, 351 F.2d 163, 167 (9th Cir. 1965); *Pisciotta v. Ferrando*, 428 F.Supp. 685, 688 (S.D.N.Y.1977); *Smith v. Rivest*, 396 F.Supp. 379, 383 (E.D.Wis.1975); *Rotermund v. United States Steel Corp.*, 346 F.Supp. 69, 76 (E.D.Mo.1972), *aff'd* 474 F.2d 1139 (8th Cir. 1973).

Upon the foregoing,

IT IS ORDERED That the plaintiffs' motion for leave to amend their complaint be and hereby is granted, and the plaintiffs' amended complaint shall be filed.

IT IS FURTHER ORDERED That the defendant's motion for partial summary judgment be and hereby is granted.

IT IS FURTHER ORDERED That Counts II, III, IV, the plaintiffs' claim for attorney's fees and their claim for exemplary damages be and hereby are dismissed with prejudice.

IT IS FURTHER ORDERED That, based upon the court's express determination that there is no just reason for delay, the Clerk shall enter judgment accordingly.

IT IS FURTHER ORDERED That this matter be and hereby is remanded to the District Court of Hennepin County, Minnesota.

IT IS FINALLY ORDERED That the order of remand be stayed for forty (40) days from and after the date of this order or until the final determination of any appeal taken from this order.